State Road No. 61 (formerly Road No. 10) leading from the City of Tallahassee, Florida, to the Georgia line was created by Chapter 9311, Acts of 1923, Laws of Florida. Subsequently the designated road was surveyed, located and graded and pavement thereof completed about 1927. Road No. 61 followed the general course of the then existing Tallahassee and Thomasville road, but many curves in the old road were eliminated when the new road was constructed.
The parties to this suit own land situated in Section 19, Tp. 1, North, Range 1 East, abutting on or adjacent to the new highway No. 61 or the old Thomasville road at a point situated north of the City of Tallahassee, where a curve was eliminated in the old road in the construction of the new highway No. 61. The highway, in 1927, was constructed to the west of the old Tallahassee and Thomasville road and left between the old and new roads a small strip of land, triangular in shape, which approached within a few feet of the new highway at the north end and the south end of the tract. An easement over and along the path of the old road, running north and south parallel with the new highway, is the basis of this suit. The old road, by an order of the Board of County Commissioners, was closed during the year 1947.
Paragraph 4-a of appellants' amended bill of complaint in substance alleged that between the years 1824 and 1851 a certain *Page 542 
road was constructed across described land, which later became known as the Tallahassee and Thomasville road and included that portion of the old road involved in this suit, but no deeds conveying the land for public road purposes were ever executed. The general public, in the course of time, acquired by prescriptive use a right of way and easement of the road bed here involved. The land in question originally was a part of the General LaFayette grant and by mesne conveyances became the property of John S. Winthrop. Prior to 1887 John S. Winthrop and his predecessors in title used the road bed in controversy as a means of ingress and egress by foot, horseback and vehicles for themselves and tenants, as well as the passage of livestock to and from their property abutting the road bed. The use of the road for the enumerated purposes supra, on the part of Winthrop and his predecessors in title, was open and notorious for years.
The amendment alleged further that on June 10, 1887, John S. Winthrop and his wife conveyed to John MacNicol, predecessor in title to the appellants, described lands situated south and east of State Highway No. 61. The lands so conveyed abutted on the old Tallahassee and Thomasville road and the conveyance described lands situated on the west side of the old road to the center thereof, as the same traversed the Southwest Quarter of Section 19, supra. The pleading alleged that it was the intention of the parties, implied as a matter of law, to convey to John MacNicol the land abutting on the west of the old Tallahassee and Thomasville road. Also an easement for the continued use of the east half of the old road, as it then existing, as a means of ingress and egress to and from the property abutting on the old Tallahassee and Thomasville road. Such easement by the conveyance was reserved by Winthrop and his successors to lands abutting on the east side of the old Tallahassee and Thomasville road. Likewise, a similar easement was reserved for the continued use of the abutting property on the west side of said road.
The pleading recited that John S. Winthrop conveyed a portion of said lands to Watson, a predecessor to some of the appellants, and it was the intention of all the parties to said conveyance, implied as a matter of law, that the existing easement over the old road bed as a means of ingress and egress to abutting property should be reserved and continued as an easement into the original Watson and his heirs, who are appellants to this suit. Other allegations appear in the amendment unnecessary to recite in order to rule on the point of law presented.
The plaintiffs-appellants offered evidence in the court below to establish the existence of a private easement continuously since the year 1927 on the west side of the old road, being the east side of the triangular shaped tract, from a point where the Betton Road intersected the new highway on the north to a point on the south where the Watson land approached the new highway. The defendants-appellees offered evidence in contradiction thereof and contended that the private easement, as a matter of fact, has not existed as they now own to the middle of the old road free of the existence of a private easement as asserted by the appellants.
The record reflects that the old Tallahassee and Thomasville road, inclusive of the portion involved in this suit, has been used by the traveling public for a period of more than one hundred years. It is true that the record fails to disclose deeds or other conveyances to the public authorities from the original owner or owners of the portion of the road involved, but its dedication to the use by the public as a road for years cannot be successfully challenged. Chapter 4338, Acts of 1895, Laws of Florida, F.S.A. § 343.01 et seq., provided for the establishment, working and repairing and the maintenance of the public roads and bridges of the several counties of Florida and the power and authority to accomplish these objectives were lodged in the Board of County Commissioners of the several counties of Florida.
Section 1 of Chapter 4338, supra, F.S.A. § 343.01, gave to the County Commissioners *Page 543 
the general superintendence of the public roads; they were granted the power to establish new roads, change and discontinue old roads, and to keep all public roads in good repair. Section 3, F.S.A. § 343.04, provides that no public road could be established, changed or discontinued except by an order of the Board of County Commissioners and the procedure therefor is outlined by the terms and provisions of the Act. We may assume that the officials of Leon County, pursuant to Chapter 4338, discharged their legal duty in the maintenance and upkeep of the portion of the public road here involved until the present highway was designated by Chapter 9311, Acts of 1923.
It was admitted below that the old road was a public highway and John S. Winthrop in his lifetime owned all land in Section 19, supra, on both sides of the old Tallahassee and Thomasville road and all parties to the suit claim under Winthrop by deed, descent or devise. Also, for a period of more than twenty years prior to the construction of the present highway in 1927 the appellants and their predecessors in title owned the lands on both sides of the old road and continuously for years used the same as a means of access to their property abutting thereon by foot, vehicles and passage of livestock. The Board of County Commissioners during 1947, pursuant to a recent Act of the Legislature, entered an order discontinuing that portion of the old Tallahassee and Thomasville road as is involved in this suit. We fail to find in the record issues or testimony in support thereof as reasonably calculated to bring this controversy within the several provisions of Chapter 704, F.S.A.
From the factual background set out in the pleadings, inclusive of testimony offered by the plaintiffs-appellants in the court below, it is their contention that only one question is presented for adjudication by the record and is viz.: Where the owner of land encumbered by the easement of a well established and long used public road conveyed several parcels abutting this road, did he not impliedly grant and reserve for himself and future owners on opposite sides of the road, easements for the continued use of the roadway, which will survive a subsequent abandonment of the public character of the road?
In the case of Burdine v. Sewell, 92 Fla. 375, 109 So. 648, this Court pointed out fundamental principles helpful to courts in distinguishing between an easement and license, in light of surrounding circumstances. We defined an easement as an interest in land which could be created only by grant, evidenced by provision therefor in a deed, or it may be inferred by construction placed upon the terms and conditions appearing in a deed, or an easement may be established by evidence showing a long enjoyment thereof establishing clearly proof of the original grant, although no deed contained the provision. Easements over land may be created in three ways: First, by express grant; second, by implication; and third, by prescription.
Citations of authorities from the States of Massachusetts, Wisconsin, Illinois and Pennsylvania and Thompson on Real Property are relied upon by resourceful counsel as here controlling. We are unable to agree to the contention. It appears that excerpts taken from the opinion of the able Chancellor below fully answer each contention of counsel for appellants and are viz.:
"The controversy between the parties to this suit revolves around the west half of this abandoned portion of the old road. The defendants claim the fee title unencumbered by any easement. The plaintiffs assert a private easement along the west half of the road bed in their favor.
"In order to prevail the plaintiffs have the burden of establishing the creation of an easement by proof of a grant, a presumptive grant (prescription), a reservation or a way of necessity.
"John S. Winthrop could not have owned a private easement in 1887. He owned the fee. He could not, at the same time own *Page 544 
an easement superimposed upon his fee. See Annotation 98 A.L.R. 591.
"Therefore, at the time John S. Winthrop executed the deed to defendants' predecessor in title he owned the fee burdened only by the public easement incident to the then existing public road.
"Subsequent to the conveyance by John S. Winthrop to defendants' predecessor in title and prior to the construction of the new road neither John S. Winthrop or those claiming under him could have acquired by prescription a private easement in the road bed because their use was in common with the public use. See Annotation 111 A.L.R. 221.
"The evidence is clearly insufficient to establish the creation of a prescriptive private easement in plaintiffs subsequent to the cessation of public use of the portion of the road in question.
"It is contended, however, that because of the fact that the public road lay partly along and over one side of the land conveyed by John S. Winthrop in 1887 there is as matter of law an implied reservation of a private easement along the same route. Some cases support this contention, but the majority of the cases hold otherwise unless the easement is one for a way of necessity. See Annotations 34 A.L.R. 233, 242; 100 A.L.R. 1321; 164 A.L.R. 1001, 1007.
"The reservation of any interest whatever in land conveyed by the formal execution and delivery of a warranty deed specifically describing the land by metes and bounds and expressly conveying to the center of the road is wholly inconsistent with the deed and should not be implied under any circumstances other than an absolute necessity, even if then.
"No necessity is shown at the present time. The plaintiffs, Winthrop, et al., have ready access to the present highway by means of a paved lateral road and have another outlet by means of a street of the City of Tallahassee. The plaintiffs Watson, et al., have access to the present highway because their property abuts thereon.
"Probably the best proof of the lack of present necessity for the asserted easement is the very meager use claimed by plaintiffs to have been made of the old road bed during the past two decades.
"There is neither allegation nor proof that there was any necessity for the implied reservation of a private easement in 1887 when John S. Winthrop conveyed to defendants' predecessor in title."
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur. *Page 577