102 So.2d 653 (1958)
F. KIRMA, Appellant,
v.
Robert NORTON and Helen Norton et al., Appellees.
No. 289.
District Court of Appeal of Florida. Second District.
May 7, 1958.
*655 Arthur Knudsen, Jr., of Allen & Knudsen, Fort Myers, for appellant.
Thomas Shands, Fort Myers, for appellees.
SHANNON, Judge.
Appellees, plaintiffs below, are the property owners in a certain subdivision in Lee County, Florida, which is known as Russell Park Subdivision. This property lies in front of the appellant's, defendant below, property, separated only by a road, and plaintiffs are connected to a sewer line that runs under defendant's land to the Caloosahatchee River, where it protrudes about eight inches through the defendant's seawall and empties into the river. The plaintiffs brought a bill for permanent injunction restraining the defendant and his successors in title from interfering in any way with the flow of sewage through the sewer line to the river. Thereafter an answer and counterclaim were filed and testimony was taken. By his final decree the Chancellor found the equities with the plaintiffs and granted to them the right to maintain said sewer line and restrained the defendant and his successors in title from interfering with any part of the sewer line or its operation and maintenance. This appeal is from the Chancellor's determination.
It appears from the evidence that this subdivision was put on the market in 1925, at which time the subdivider advertised in the newspapers concerning the lots in said subdivision in part as follows:
"A Paradise For The Homeseeker
"Each lot brings with it the last word in modern improvements; curbs, sidewalks, water, sewers and lights  the most advantageous yet economical investment at the door of the fastest-growing city on the West Coast. Only a short drive from the center of town  on the highest elevation in this vicinity." (Italics ours.)
In evidence is an affidavit by L.F. DeBordenave, who was an engineer and codeveloper of the subdivision, who states that he engineered the project and supervised the installation of all sewer lines in Russell Park including the present ones prior to October 1, 1925, and that the same were in use in 1926. The plaintiffs or their predecessors in title have used the sewer lines ever since they were installed. The defendant purchased his property in the subdivision during April, 1951.
In his deposition Charles W. Russell, the developer, testified that he represented to the purchasers they had a sewer right, that he felt he conveyed such right to them, that he intended to convey such rights. During March of 1951 he executed a quitclaim deed to all the purchasers of the subdivision lots, in which there was spelled out the sewer system which he had intended to convey to the purchasers. He received no consideration for this quitclaim deed.
The grantor to the defendant testified that the sewerage pipe emptied into the Caloosahatchee River and that the defendant asked him about the pipe and was advised by the witnesses that the pipe was a sewerage pipe.
The final order of the Chancellor decreed the plaintiffs' use of the sewer line to be a permanent easement. The defendant has posed four questions but, in deciding the case, it will only be necessary for us to determine two of them, the first of which is the alleged violation by the plaintiffs of Section 387.08, Fla. Stat. 1955, F.S.A., and the second one is whether or not the plaintiffs have a valid easement. Section 387.08 provides:
"Any person, firm, company, corporation or association in this state, or the managing agent of any person, firm, *656 company, corporation or association in this state, or any duly elected, appointed or lawfully created state officer of this state, or any duly elected appointed or lawfully created officer of any county, city, town, municipality, or municipal government in this state, who shall deposit, or who shall permit or allow any person or persons in their employ or under their control, management or direction to deposit in any of the waters of the lakes, rivers, streams and ditches in this state, any rubbish, filth, or poisonous or deleterious substance or substances, liable to affect the health of persons, fish, or live stock, or place or deposit any such deleterious substance or substances in any place where the same may be washed or infiltrated into any of the waters herein named, shall be deemed guilty of a misdemeanor, and, upon conviction thereof in any court of competent jurisdiction, shall be fined in a sum not more than five hundred dollars; provided, further, that the carrying into effect of the provisions of this section shall be under the supervision of the state board of health."
In the testimony, John W. Wakefield, the sanitary engineer for the Florida State Board of Health, said in part:
"Q. Mr. Wakefield, in your opinion as a sanitary engineer, will septic tanks work adequately in Block 5?
"A. In my opinion the general area there including Block 5 could not be expected to give satisfactory operation with septic tanks year around.
"A. * * * The State Board of Health would very much like to see a sewage treatment plant. However, so far we haven't found any legal entity to undertake the construction of such a plant. To install individual septic tanks at each house would in my opinion create more of a sanitary nuisance than the discharge of sewage into the river. So we have taken the lesser of the evils and have not attempted to require the removal of the sewer.
"Q. You speak of it as a nuisance. In your opinion is the existing sewage disposal system safer from a health standpoint than the installation of the septic tanks in all of the homes on those lots?
"A. In my opinion, yes."
In addition to excerpts from Wakefield's testimony, the witness, Wakefield, also testified that the City of Fort Myers empties its sewerage into the river.
Section 387.08 is obviously a criminal statute but, regardless of that, the statute has a clause under which the State Board of Health has the supervision of the provisions of the statute. Just as obviously the statute was not designed to give it injunctive power which would create a more dangerous health problem than had existed. The Chancellor had this statute before him at the time of the final decree, together with the testimony of the various witnesses, and he decided, correctly, from the evidence, that the apparent violation of it could not be the basis for denying the plaintiffs the right of injunctive relief.
The defendant takes the position that the Chancellor, in holding that the plaintiffs were entitled to an easement, could not have correctly found that such easement arose expressly, by implication, or by prescription, the three ways in which it might have arisen.
In order to raise an easement by implication there must have been a unity of title between the dominant and servient estate. Guess v. Azar, Fla. 1952, 57 So.2d 443, and a conveyance, 28 C.J.S. Easements § 30, for the easement is held to be impliedly granted, or more rarely, reserved, in view of circumstances existing at the time of the conveyance which *657 would make such easement necessary for the complete enjoyment of the estate granted or reserved. Frequently, it is held that a use, to be an implied easement, must have been continuous, apparent, permanent, and necessary when the unified title was severed. The word "continuous" has been interpreted to mean apparent or permanent, or adapted to continuous use, or in some jurisdictions capable of being enjoyed without the need of any act of man. Those courts adapting the latter test exclude private roads, but include drains, however, infrequently used. 28 C.J.S. Easements § 33a. In the instant case the easement arose by implication, if at all, when the unified title was severed, i.e., when Russell sold the lots to purchasers while retaining that property next to the river, through which the sewer ran, and it would seem that the use of the sewer line would meet the requirements generally imposed. The requirement of apparency does not mean visible, 28 C.J.S. page 691, but something that might be discovered by reasonable inspection.
It has been held that to establish an easement by implication there must be something on the servient estate that, if not visible, is a permanent artificial structure, Swarzwald v. Cooley, 39 Cal. App.2d 306, 103 P.2d 580.
Under either view the sewer in the instant case meets the requirements; it was expressly built for the use and benefit of the lot owners, and extensively advertised; Mr. Russell testified that he thought he was granting an easement to the use of the sewer when he sold the lots in the subdivision.
Having decided such easements would arise in favor of the lot owners, we are concerned with the effect of such easement on a remote grantee, as a bona fide purchaser without notice of easements, takes the property free of such easements. 28 C.J.S. Easements § 50. This rule has been limited by some courts to where the owner of the dominant estate has failed to do something he should have done. On the other hand a purchaser will be held to such notice where the facts would put a prudent buyer on inquiry, and in the instant case there seems to be substantial evidence upon which the Chancellor could have found that the defendant did know, or should have known, the nature of the pipe protruding through his seawall.
The defendant argues against an easement arising by prescription taking the position that such prescription is based entirely upon a deed in the nature of a quitclaim to the property owners. He argues that Russell was the owner of the sewer line until 1951, and that any use prior to that time was permissive, and hence, could not be adverse so as to count toward the twenty year prescriptive period. He quotes J.C. Vereen and Sons v. Houser, 123 Fla. 641, 167 So. 45, 47, but, in that case, Mr. Justice Buford, in quoting from Thompson on Real Property, vol. 1, p. 487, states:
"`An easement by prescription is created only by adverse use of the privilege with the knowledge of the person against whom it is claimed, or by a use so open, notorious, visible and uninterrupted that knowledge will be presumed, and exercised under a claim of right adverse to the owner and acquiesced in by him; and such adverse user must have existed for a period equal at least to that prescribed by the statute of limitations for acquiring title to land by adverse possession.'"
Upon conflicting testimony the Chancellor necessarily found that the use of the sewer line was continuous, apparent, permanent and necessary and in light of its use for more than twenty years, adverse. In light of this the language in Zetrouer v. Zetrouer, 89 Fla. 253, 103 So. 625, 626, is applicable where it is stated:
"* * * Where the common law obtains, 20 years' continuous and uninterrupted *658 use has always created a prescriptive right as well in the public as private individuals. Such a right once obtained is valid and may be enjoyed to the same extent as if a grant existed, it being the legal intendment that its use was originally founded upon such a right. * * *"
In view of what we have said the final decree of the Chancellor will have to be affirmed.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.