460 So.2d 961 (1984)
The MOORINGS ASSOCIATION, INC., Individually and the Moorings Association, Inc., a Class Representation, Appellants,
v.
TORTOISE ISLAND COMMUNITIES, INC., and Tortoise Island Group, Ltd., Appellees.
No. 83-499.
District Court of Appeal of Florida, Fifth District.
December 13, 1984.
*962 J. Daniel Ennis of Ennis & Northcutt, Indian Harbour Beach, for appellants.
Kerry I. Evander of Reinman, Harrell, Silberhorn, Moule & Graham, P.A., Melbourne, for appellees.
ORFINGER, Judge.
This appeal is from a final order dismissing appellants' second amended complaint and cause of action. We reverse because we find that the complaint sufficiently alleges a cause of action for an implied easement.
Appellants, The Moorings Association, Inc., individually, and The Moorings Association, on behalf of the homeowners of The Moorings Subdivision, pursuant to Rule 1.220, Florida Rules of Civil Procedure, sued appellees Tortoise Island Communities, Inc. and Tortoise Island Group, Ltd. The Moorings is a residential subdivision located on the east side of a canal known as the Great Canal. On the west side of the canal is an island and west of the island is the Banana River. Because we are dealing with an order dismissing appellants' (plaintiffs) second amended complaint, we assume the correctness of all well-pleaded allegations.
The appellants alleged that the Moorings homeowners purchased their lots from T.O.L., Inc., a subsidiary of Condeland Corporation, and, as part of the inducement to purchase, they were promised an access canal across the adjacent island to the Banana River, thus giving the lot owners direct access to the Banana River from the Great Canal. After some of the lots were sold, Condeland actually constructed the access canal, known as the "Moorings Cut," completing it in 1967. Since that time, the cut has been used by most Moorings residents who own boats for ingress and egress to the Banana River.
In 1967, after opening the canal, T.O.L. and Condeland Corporation executed and delivered written grants of easement through the "Moorings Cut" to thirteen of appellant's homeowners. It appears from the allegations of the second amended complaint that each grant of easement was by a separate document specifically naming each of the thirteen lot owners as a grantee. The thirteen express easement holders are apparently not parties to this action, except as members of the association. In the letter which accompanied these easement grants, the developer recited that the grants were in "fulfillment of our promise to provide permanent access for you, your family, and all residents of the Moorings to the waters of the Banana River" (emphasis added). The thirteen recorded easements contained a recitation that the grant "... is intended to give the Grantees the right and privilege, in common with others of access by boat in the waters of the Banana River ...".
It was also alleged that T.O.L. subsequently conveyed the island to the appellees, Tortoise Island Communities, Inc. and Tortoise Island Group, Ltd., who were fully aware of the existence of the access canal and of its continuous use by the Moorings residents. In July, 1982, the appellees filled in portions of the canal, thereby preventing the appellants from using the cut as a direct access to the Banana River. As a result, the appellants brought an action seeking an injunction against any further filling of the cut, removal of the fill already placed in the cut, an adjudication of a constructive trust, and an adjudication of an express or implied easement on behalf of the residents who purchased their property in reliance upon the existence of the easement.
An easement may be created either by express grant, by implication or by prescription. Winthrop v. Wadsworth, 42 So.2d 541 (Fla. 1949); Canell v. Arcola Housing Corp., 65 So.2d 849 (Fla. 1953). While the complaint fails to allege facts showing an express grant to these appellants or acquisition of an easement by prescriptive use, it does sufficiently allege an easement by implication, so that the dismissal of the second amended complaint was error. The trial court was apparently erroneously led to believe that an easement by implication must depend on a showing *963 of "strict necessity" such as is required to claim a common-law way of necessity, now codified in section 704.01, Florida Statutes (1983), but that standard is too rigorous in determining whether or not there exists an easement by implication as is asserted here.
An implied easement is based on the concept that whenever a grantor conveys property, he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment. 25 Am.Jur.2d Easements and Licenses § 24 (1966). An implied easement may generally arise from an implied grant or reservation in a deed, from a conveyance calling for a way as a boundary, from a conveyance with reference to a plat or map showing streets or ways, or as a way of necessity. 20 Fla.Jur.2d Easements § 20 (1980). Whether an easement arises by implication depends on the intent of the parties as shown by the circumstances under which the conveyance was made. 25 Am.Jur.2d Easements and Licenses § 24.
There are three essential elements for the creation of an easement by implication: (1) unity of title between the dominant and servient estate and a subsequent separation; (2) necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Kirma v. Norton, 102 So.2d 653 (Fla. 2d DCA 1958).
In the case at bar, unity of title is alleged. The complaint also asserts that it was the intent of the developer to create an easement in favor of all Moorings residents, that the access canal was open and visible and that the appellees were not bona fide purchasers without notice, that the use of the access canal from 1967 to 1982 was so long, continued and obvious as to show that it was meant to be permanent, and that by filling in the canal the appellees were depriving the owners of a valuable property right and were diminishing the value of their property.
On the element of "necessity," Florida courts recognize that the degree of necessity required to be alleged fluctuates with the type of implied easement. For example, the common-law implied grant of a way of necessity is codified in Fla. Stat. § 704.01 and requires that in order for such an easement to exist there must be "no other reasonable and practicable way of egress, or ingress" and the easement must be "reasonably necessary for the beneficial use or enjoyment of the part granted or reserved." Thus, the statute requires that there be an absolute necessity for the easement. Such strict necessity is not asserted sub judice, and it is clear that appellants are not relying on the existence of an easement under the statute.
Rather, appellants appear to be basing their right to recovery on the common-law doctrine of implied grant or "quasi-easement," recognized by Florida courts as related to, but different from the doctrine of strict necessity. See, Williams Island Country Club, Inc. v. San Simeon at the California Club, Ltd., 454 So.2d 23 (Fla. 3d DCA 1984); Star Island Associates v. City of St. Petersburg Beach, 433 So.2d 998 (Fla. 2d DCA 1983); Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960). The doctrine of implied easement contemplates that when a landowner conveys part of his land, he impliedly grants all apparent or visible easements upon the part retained which were at that time used by the grantor for the benefit of the land conveyed and which were reasonably necessary for use of the land conveyed. Star Island Associates at 1003; Dinkins at 622, quoting 2 Thompson on Real Property § 392 (1980).
In Dinkins v. Julian, the court discussed the doctrine of implied grant as a principle of law separate and distinct from the implied grant by way of necessity. There, the plaintiffs sought equitable relief to prevent obstruction of a roadway which had been in long and continuous use, and which made their properties corner lots because *964 of the intersection of that roadway with other streets in the subdivision.
After dispensing with the implied grant by way of necessity because the complaint did not allege strict necessity, the Dinkins court addressed the doctrine of implied grant. Relying on Thompson on Real Property, the court recognized the doctrine of implied grant, holding that there must have been a separation of title and a use, before separation took place, which continued long enough to show that the use was meant to be permanent. The implied easement, the court stated, is "gathered from the circumstances surrounding the conveyance and this is taken to mean that whatever is obviously in use as an incident or an appurtenance passes by implication when the land is sold." Dinkins, 122 So.2d at 623. The court further stated that a presumption exists that the parties contracted with reference to the visual condition of the property at the time of sale, but that this presumption may be rebutted by showing actual knowledge to the contrary. Nevertheless, because there was no allegation of unity of title, the court held that an implied grant was not sufficiently alleged.
Dinkins recognizes that the creation of an easement by implication from a pre-existing use does not require an absolute, but only a reasonable, necessity, such as will contribute to the convenient enjoyment of property, other than mere temporary convenience. See also, 25 Am.Jur.2d Easements and Licenses § 33 (1966). See also, Kirma, supra, a case involving a sewer pipe which ran from a subdivision under a subsequent grantee's property and out into a river, where the court observed that an easement by implication is "held to be impliedly granted, or more rarely, reserved, in view of circumstances existing at the time of the conveyance which would make such easement necessary for the complete enjoyment of the estate granted or reserved." Id., 102 So.2d at 656-57.
The doctrine of implied grant, reinforced by the principle that a grantor is equitably estopped to deny that grant, was recognized by this court in Leffler v. Smith, 388 So.2d 261 (Fla. 5th DCA 1980) rev. denied, 397 So.2d 778 (Fla. 1981). In that case the developer, Inez Meredith, subdivided a parcel into 29 lots as the Gene Gables Section of Meredith Manor. She later conveyed 26 of these lots to Meredith Enterprises, the deed containing a recitation that "all of lot 1, Block "E" is reserved for the exclusive use of resident property owners of record as a park and bathing beach." This lot fronted on Lake Brantley. The following year Inez Meredith subdivided another parcel of land into 73 lots, as the Nob Hill Section, Meredith Manor, and conveyed all 73 lots to Meredith Enterprises. Lot 15 Block "A" of that section fronted on Lake Rena. In the deed conveying the 73 lots, there was no reference to any easement in Lot 15, Block "A," but the evidence showed that over the ensuing years in its dealings and negotiations with potential customers, Meredith Enterprises held out and represented to them that Lot 15, Block "A" and Lot 1, Block "E" were set aside for the use of the residents of both developments; the Lake Brantley lot for bathing and the Lake Rena lot for boat ramp purposes.
Much like the case sub judice, in Leffler, some but not all of the purchasers were given deeds indicating that those grantees were to have the use and privilege of all "resident only parks and beaches." This court affirmed the trial court's finding that implied easements existed over and upon both lots and that the easements inured to the benefit of all residents of both subdivisions, holding that
Meredith Enterprises is equitably estopped from denying to the Meredith Manor lot owners that which they were led to believe they had. See Wilson v. Dunlap, 101 So.2d 801 (Fla. 1958); McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953).
Clearly, strict necessity was not involved in Leffler, and it is not required here, where it is not relied on as a basis for relief. Thompson on Real Property explains the different degrees of "necessity" required for various types of implied easements in this manner:

*965 So it is held that the necessity in establishing an easement by implication is one of reasonableness while the necessity in creating an "easement of necessity" is absolute. An easement by necessity is not dependent upon the previous existence of quasi easements but is implied because the land could not otherwise be utilized. And so the "necessity" doctrine in implied easements has been denied. Where there is a severance of a semi dominated part of a tract from the semi dominating such fact alone does not create an easement by inference unless some necessity for continuance of the easement exists.
The element of necessity is not really involved in cases in which easements in the grantor's land are impliedly granted as part of the property conveyed. Continuous and apparent easements are implied on the theory that the purchaser of land "is entitled to enjoy the thing as it was when he bought it, with all its apparent appurtenances, if those apparent appurtenances are apparently permanent and are useful and add to its value," and it is somewhat difficult to see why the purchaser should not have such apparent appurtenance, even though it is not necessary. Where the word "necessary" appears in the cases it has been used in the sense merely, it would seem, of "necessary for the use of the tenement in the state it is in when severed." In case there is no actual physical necessity for an easement, open and continuous use of one parcel of land for the benefit of another is requisite to the creation of an easement by implication upon severance of title to the entire tract.
There is a good deal of authority, however, for the proposition that an easement may be inferred only where its presence is "necessary" to the dominant estate. It is declared in many cases that no easement or quasi easement can be taken as granted or reserved by implication, unless it is reasonably necessary to the enjoyment of the estate granted or retained by the grantor, and the easement is in fact annexed to it and in use at the time of the grant and is, as well, open, apparent and continuous. (footnotes omitted).
Thus, Thompson states:
[t]he prevailing rule of the modern cases seems to be that the necessity required in order to pass an easement by implication by a grant by a person of a part of his estate is a reasonable necessity, not an absolute necessity. It is sufficient if full enjoyment of the property cannot be had without the easement or that it materially adds to the value of the land. (footnotes omitted).
2 Thompson on Real Property § 353 (1980).
In Williams Island the plaintiff attempted to establish and preserve an easement for a strip of land running from the green of one hole on its golf course to the tee of the next hole. The lower court denied a temporary injunction because there was no recorded easement for this path. The appellate court reversed, holding that a prima facie showing was made of an easement by implication. The court agreed that strict necessity was not required to create the easement by implication, relying on many of the authorities we have cited here. After referencing to the original unity of title and long use of the path, the court said:
The rationale supporting implied easements is the court's conclusion that the parties must have intended to grant or reserve an easement as part of the conveyance of land based on the circumstances at the time of the conveyance. Restatement of Property § 476 (1944); 3 H. Tiffany, Real Property § 780 (3d ed. 1939). First, the use of the land for the easement must be apparent or visible, or reasonably discoverable at the time the unity of title was severed. Here the golf cart path was in existence and use, and was paved at the time of the conveyance to Nobata, N.V. Second, the use must be such that a permanent use was intended. 25 Am.Jur.2d Easements § 31 (1966). Here, testimony of the original parties, and language in their contract supports the inference that a permanent *966 golf cart easement was intended. Restatement of Property § 476 (1944).
Id. 454 So.2d at 25 (footnote omitted).
As to the element of necessity, then, it appears that because appellants alleged that the easement was reasonably necessary to the enjoyment of their property, materially added to the value of the land and had been in actual use at the time of the grant and was open, apparent and continuous, the appellants have sufficiently alleged an easement by implied grant. While appellants do not allege that they are otherwise without navigational access to the Banana River, they do allege that appellees' action in filling a portion of the access cut resulted in blocking their direct water access to the river which they had previously enjoyed and resulted in a diminution in the value of their property. As such, this aspect of necessity appears to have been adequately alleged in appellants' complaint, and it appears that appellants have sufficiently asserted a cause of action based upon the doctrine of implied grant. This is especially so when one considers that:
[w]hether an easement is implied in a grant depends upon the law of equitable estoppel arising from the appearances created by the act of the grantor. If, by holding out certain appearances to the purchaser, he induces the expectation on his part that with the land purchased he is to receive certain privileges, it would be inequitable for the grantor to defeat that expectation by afterwards denying them. (footnote omitted).
2 Thompson on Real Property § 353 (1980). See also, Leffler v. Smith, supra.
The advertising material attached to the complaint, both by diagram and words, represents that an access canal through the island is available to the residents of the subdivision. The letter which accompanied the easement deeds to the thirteen residents refers to it as "fulfillment of our promise to provide permanent access for you, your family, and all residents of the Moorings to the waters of the Banana River." In McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953), the supreme court, in upholding an implied grant, said that "common honesty should require that [the developer] perform that which at the time of the conveyance he represented he would perform." Id. at 910. We should require no less of the developer here, or of its successor charged with notice.
The courts should not allow a real estate developer to entice prospective purchasers with promises of alluring improvements and benefits, and not hold his feet to the fire when, after selling all the property because of the promises, he (or his successor with notice) decides that keeping his promises no longer suits his purpose. Equity provides a remedy for every wrong, and a recognized remedy is available here. Some two hundred innocent residents will see the value of their property seriously diminished (or so they allege and should be given an opportunity to prove) because the developer has been allowed to fill in a valuable waterway access which was promised to all the appellants when they purchased their property.
The final order of dismissal is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
WATSON, R.O., Associate Judge, concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
In this case the dismissed second amended complaint seeks to have the court either declare that an easement exists in favor of all resident homeowners in The Moorings subdivision or for the court to grant the appellant homeowner's association an easement for the benefit of such residents.
This claim for relief is factually founded on allegations of promises of an access canal across a nearby island allegedly made by the original subdivider in sales brochures and otherwise to original purchasers to induce them to buy lots in a subdivision on the mainland.
*967 The sole issue is whether or not the three count second amended complaint states a cause of action. That complaint is set forth in full below.[1] *968
*969 It is often stated that an easement may be created by express grant, by implication or by prescription. While this statement is correct it is easily and often misunderstood and misinterpreted.
As easement is an interest in land that must be created and conveyed with the formalities required by law. Basically this statement means that no easement can be created or transferred except by a written instrument signed in the presence of two subscribing witnesses by the party creating, granting or conveying the easement. § 689.01, Fla. Stat. See Winters v. Alanco, Inc., 435 So.2d 326 (Fla. 2d DCA 1983); Dorsey v. Behm, 356 So.2d 345 (Fla. 1st DCA 1978). Also any agreement or promise constituting a contract for the sale of an easement, or some memorandum thereof, must be in writing and signed by the party to be charged to be legally enforceable. § 725.01, Fla. Stat. (the Statute of Frauds).
An "express grant" means a grant in writing made in accordance with these statutes. Easements created by prescription are created by operation of law as a result of statutes of limitation barring legal remedies for, and relief from, the wrongful user of lands and that concept is not involved in this case although there are miscellaneous allegations in the complaint in question that are only relevant to the concept of "adverse possession" which is the analogical basis for "adverse use" upon which rests the doctrine of prescriptive rights. See Crigger v. Florida Power Corp., 436 So.2d 937 (Fla. 5th DCA 1983).
The legal confusion comes as to the statement that an easement may be created by implication. The effect of the above statutes is that unlike ownership rights in, and contracts involving the ownership of, personalty, neither ownership rights in land (including easements), nor contracts for the creation or transfer of such land interests, may be legally created by implication arising from facts independent of a writing. Since an express promise to convey an interest in land is unenforceable if it is oral, obviously promises which are merely implied in fact from words and deeds, being oral and not in writing, are also within the prohibition of the statute of frauds and constitute unenforceable agreements. Therefore, as to interests in land, including easements, and promises of grants and conveyances thereof, there are no enforceable contracts implied in facts not involving a writing, and any such writing giving rise to such rights, expressly or by implication, must comply with the statute of frauds.[2]
*970 THE GENERAL RULE OF PROPERTY LAW AS TO EASEMENTS CREATED BY IMPLICATION: Primarily because of the statute of frauds, the general rule of law is that no easement or other interest in land can be granted or reserved by implication.
THE TWO POSSIBLE EXCEPTIONS: There are two, and only two, possible exceptions to the statement that because of the effect of the Statute of Frauds, easements cannot be granted or conveyed by implication. These exceptions are consistent with the reason for the rule and it is only with reference to one or the other or both of these exceptions that it can be correctly stated that an easement may be created[3] by implication.
The First Exception: Implication From a Duly Executed Writing.
The application of the general rule is well illustrated by the case of Cannell v. Arcola Housing Corp., 65 So.2d 849 (Fla. 1953), which case also describes the first exception. The issue in Canell was the sufficiency of a complaint to recover money damages for alleged fraud and deceit brought by purchasers of lots in a subdivision against a subdivider. In upholding the dismissal of the complaint the Supreme Court of Florida said:
... The complaint shows on its face that the plaintiffs' claims, whatever they may be, are predicated upon the alleged breach of an oral promise concerning an easement in land  the ownership of which is not alleged nor the location or description given.
We assume from these allegations that what the plaintiffs complain of is the fact that the defendants orally agreed and represented, in order to induce the plaintiffs to purchase lots in the subdivision, that they, the defendants, would build a bathing beach on a lake somewhere in the subdivision, which would be maintained for the use and enjoyment of homeowners in the subdivision, thereby contributing to the enjoyment of the homeowners and enhancing the value of their several properties. If this is what is to be inferred from the complaint, it is readily apparent that such an agreement would be, in effect, an agreement to create an easement in or over land. And inasmuch as such an easement would be an interest in land, it could be created only in one of three ways; firstly, by express grant, that is, by a deed expressly declaring it; secondly, by implication, that is, by inferring the grant from a construction of the terms and effect of an existing deed; and thirdly, by prescription, that is to say, by a grant established by evidence clearly showing a long and continuous enjoyment and user, although no deed contains the provision. Burdine v. Sewell, 92 Fla. 375, 109 So. 648; Winthrop v. Wadsworth, Fla. 42 So.2d 541.
Manifestly, none of these situations is present in the case at bar. The plaintiffs are relying upon a mere oral promise to create the easement, which is clearly within the terms of the statute of frauds and thus cannot be enforced directly or indirectly. Section 725.01, Florida Statutes 1951, F.S.A. If the deeds to plaintiffs did not mention the easement in the description of lands and property rights conveyed, or refer to a plat reflecting same, compare McCorquodale v. Keyton, Fla., 63 So.2d 906, then to give any effect to oral promises in respect to other lands or rights therein would amount to an unauthorized reformation of the description in the deed. Browne, Statute of Frauds, 5th ed., sec. 441(c).
While it is contended by plaintiffs that they are suing for damages for fraud and deceit, such an action under *971 the circumstances of this case is simply an attempt in an indirect manner to obtain damages for breach of the contract. Since the provision in the statute prohibiting any action to be brought on an oral contract within the statute includes actions based indirectly on the contract, "an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even through the defendant at the time of the making of the oral contract may have had no intention of performing it." 25 R.C.L. 691. See also Dung v. Parker, 52 N.Y. 494. Although some courts have reached the contrary conclusion, 49 Am.Jr. p. 841; 23 Am.Jr. p. 889; anno. 104 A.L.R. 1420, we think that on the facts of the case under consideration the rule quoted above is best calculated to uphold the theory upon which the statute of frauds is founded, in accord with the principle that so long as the statute can be made to effectuate its purposes, courts should be reluctant to take cases from its protection. Yates v. Ball, 132 Fla. 132, 181 So. 341.
From the Canell case we learn that the creation of an easement by implication is done "by inferring the grant from a construction of the terms and effect of an existing deed" (emphasis supplied), thus it can be stated that a grant is created by implication when the terms and effect of some duly executed deed are ambiguous in some detail and a court in construing the ambiguous writing by inference determines that the writing creates an easement. This usually occurs when a deed describes a lot by reference to a plat which plat shows servient lands held for the use and benefit of the subdivided lots and the court construes the deed to include an easement in the servient lands in favor of the grantee of one of the dominant lots. See, e.g., Katcher v. Sans Souci Company, 200 So.2d 826 (Fla. 3d DCA 1967); Wise v. Quina, 174 So.2d 590 (Fla. 1st DCA 1965); Boothby v. Gulf Properties of Alabama, 40 So.2d 117 (Fla. 1949), or where there is ambiguity as to the extent of an easement validly created by a written document, see, e.g., Dorsey v. Behm, 356 So.2d 345 (Fla. 1st DCA 1978). In this situation the deed or other written document satisfies the statutes (§§ 689.01 and 725.01, Fla. Stat.) and the easement is merely created by implication from the writing and the intention of the parties to the writing is of judicial concern in construing the writing. The complaint in this case is insufficient as a cause of action to have existing written documents (which themselves comply with the statutes) be judicially construed to include the easements sought.
The Second Exception: Implication of a Way of Necessity as a Matter of Law:
The common law evolved causes of action though three cycles, first came causes of action to enforce express obligations; next came legal remedies to enforce obligations inferentially undertaken (promises implied in fact) and finally remedies were involved to enforce obligations implied in law independent of the intention of the parties. See the dissent in Sanders v. Cowan, 459 So.2d 358 (Fla. 5th DCA 1984). During this evolutionary period, one cause of action to acquire an easement, and only one, crossed the line between a cause of action based on a promise implied in fact and into a cause of action implied by law from a particular factual situation and existing without regard to the actual intent, express or implied in fact, of the obligated party to be bound. This is the common law cause of action to establish an easement for a way of necessity and it can correctly be called the creation of an easement by implication. However, the elusive difference between an action based on a promise implied in fact (which is within the statute of frauds) and an action based on rights and obligations implied as a matter of law, saves this exceptional situation from the effect of the statutes (§§ 689.01 and 725.01, Fla. Stat.). In this situation the seller agrees to sell the buyer part of a larger tract of land owned by the seller. The part of the larger parcel agreed to be sold is Parcel A and the part retained by the seller is Parcel B. In point of fact, the only practical ingress and egress to and from *972 Parcel A and a public road is over and across Parcel B. However, the parties do not consider this access problem and there is no promise, agreement or representation, written or oral, express or implied in fact, between the contracting parties about the buyer acquiring any interest in Parcel B. In this situation the common law assumed that the parties knew that in order to use Parcel A the buyer had to have access to it and that the seller was acting in good faith and intended to convey the beneficial use of Parcel A to the buyer. Therefore, to effectuate these assumptions the common law raised up or implied as a matter of law a promise on the part of the seller to give a right-of-way of necessity to the buyer over and across Parcel B. If the parties in this situation considered the access problem and had any agreement, express or implied in fact, as to the buyer obtaining, or not obtaining, any access easement in Parcel B, then the legal inquiry is as to the existence and enforceability of that agreement and the factual basis for the common law implication of an easement does not exist and that concept does not apply. The buyer's various[4] causes of action against a seller who has made but breached a promise to convey the buyer an easement are in law in pari materia with the claim of a common law way of necessity because if the easement that the seller has promised the buyer is an easement for a way of necessity the various legal causes of action for enforcement of the buyer's rights are all based on remedies for breach of that promise and the buyer does not have a cause of action for adjudication of a common law implication of an easement for a way of necessity. The underlying factual bases for the two different causes of action (one being based on an actual promise and the other arising by operation of law from the facts and the absence of an actual promise) are necessarily inconsistent. Winthrop v. Wadsworth, 42 So.2d 541 (Fla. 1949), is a case involving a "way of necessity" "implied as a matter of law" and equates the concept of an easement by implication with "a way of necessity." Winthrop, therefore, is the authority for the suggestion that the common law way of necessity implied by law can be considered an easement created by implication and suggests that concept as being the second possible exception to the general rule that no easement can be created or conveyed by implication. However, Winthrop also cites Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926), as defining an easement by implication as one "inferred by construction placed upon the terms and conditions appearing in a deed," see Canell, supra.
The facts alleged in the second amended complaint in this case relate to promises allegedly made by the seller to subdivision buyers. The mere fact that the alleged promises relate to what is called an "access" canal does not make applicable the law relating to an implied promise as to a way of necessity. The causes of action attempted to be alleged in the complaint in this case do not involve, and the facts do not fit or support, the legal concept of an implied right-of-way of necessity. See Dixon v. Feaster, 448 So.2d 554 (Fla. 5th DCA 1984).
In addition to all of its other insufficiencies the complaint in this case fails to describe the claimed easement by legal description from which a proper final judgment could be prepared. Although framed as a complaint for declaratory judgment and injunction, in substance the complaint seeks enforcement (specific performance) of oral agreements to grant easements. In all events the complaint must contain a legally sufficient description of the land *973 over which the claimed easement exists. The second amended complaint affirmatively shows on its face, as in Canell, that the claims asserted are predicated upon the alleged breach of oral promises to grant easements and any decision upholding it would violate the statute of frauds and directly conflict with Canell.
THE CLASS ACTION: As a class action the complaint in this case is also fatally defective. Appellant, a homeowners association, does not own the causes of action asserted. Appellant attempts to represent some but not all of the present lot owners or residents in the subdivision. Appellant alleges that it, as an association, is composed of about 140 residents out of about 200 residents in the subdivision but it does not identify such residents nor the lots they own. Furthermore, many of the present owners or residents in the subdivision are remote grantees of the original subdivider. The subdivider made no promise to those present owners or residents and they have no privity or cause of action against the subdivider for breach of promise or otherwise. The thirteen original purchasers who are alleged to have received written easements pursuant to express promises certainly have no cause of action for any "implied easement." Of course, those thirteen written easements conferred no rights on the present owners of subdivision lots. In point of fact, the written easements actually given them contrasts with the claims asserted in this action which are based on oral promises of easements. The reference to the rights of thirteen easement holders is but an effort by the plaintiff homeowners association to ride into the court on the coattails of the thirteen who apparently received written documents complying with the statutes.[5] Written easements granted to thirteen specific grantees do not create written enforceable rights in others.
Under Florida Rule of Civil Procedure 1.220 a class action is maintainable on behalf of a class by one party or more of the class suing as a representative of all members of the class. Notwithstanding the lengthy "class representation allegations" contained in subparagraphs 1.a through 1.r of the second amended complaint, the complaint does not allege that appellant homeowners association purchased property from the original subdivider in reliance on the seller's promise of an access canal and, therefore, the complaint fails to state a cause of action in favor of appellant. Further, the complaint affirmatively alleges facts showing that appellant is not a member of the class it purports to represent as is required of class actions.
Furthermore, the complaint fails to allege a legal claim for relief (cause of action) raising questions of fact common to all other members of the class, as required by rule 1.220. This is because the various original purchasers from the subdivider did not purchase their individual lots at one time under one contract induced by one promise of the subdivider. Each original purchaser had his own separate and distinct contact (some of which may even have complied with the statute of frauds as to the promise of an access canal across Tortoise Island) and made his own determination of what terms were material and important to him and what representations, if any, induced him to buy and what promises, if any, he relied on in purchasing. Each of the many causes of action possibly alleged in this class action is necessarily based on a separate factual event including separate and different promises and some such original purchasers may have relied on the subdivider's promise of an access canal while others may not have. Each cause of action is diverse and individual and personal to the original purchaser and each purchaser has a choice of remedies and are possibly subject to separate and distinct defenses, such as laches and the statute of frauds.
Promises made by the original subdivider to some one or more of the original purchasers do not create causes of action in favor of all subsequent owners or residents in the subdivision. Possible valid *974 causes of action in favor of some original purchasers cannot be combined with unfounded claims by other present residents in the subdivision, with the whole ball of wax presented in one class action so that proof as to some valid causes of action in favor of some persons can be used to establish rights in many who have no valid cause of action.
If each of the persons whom appellant seeks to represent in this class action purchased in reliance on some enforceable promise made by the subdivider each should individually allege the promise made to them, their personal reliance on it and sue on the promise made to them. The cause of action of each such person while similar, is based on its own particular facts and is, therefore, unique and different.
Easements appurtenant must relate to a dominant estate; such freehold interests cannot exist generally in favor of an indefinite group of unnamed persons, such as the persons who are members of the appellant homeowner's association or who reside in or owned lots in a subdivision at some one moment of time or from time to time. The complaint contains no legal description of the land that is to be the dominant estate or the land to be the servient estate. There is no way a court can validly adjudicate a cause of action and establish a servient estate across some legally undivided part of some unidentified island in favor of some unidentified owners of unidentified lots in a subdivision on the mainland. See generally, Cox v. LaPota, 76 So.2d 662 (Fla. 1955); Edmun Realty Corp. v. Kearns, 158 Fla. 558, 28 So.2d 834 (1947); Whitson v. Owens, 94 Fla. 1201, 115 So. 512 (1928).
This case is very similar to the case of Lance v. Wade, 457 So.2d 1008 (Fla. 1984). In that case two members of a class composed of about 350 purchasers of mobile home lots filed a class action alleging reliance on allegedly false representations by the seller contained in advertising brochures and otherwise relating to the paving of access roads from the lots to a nearby highway. The alleged fraudulent representations were promises that certain roads would be paved in the future and it was alleged the corporate seller had no intent to pave the roads. The supreme court held that fraud actions based on separate contracts are inherently diverse and not the proper subject of class actions. The court pointed out that in such a case the demands of the various purchasers are not only legally distinct, but each depends on its own facts and each involves a choice of remedies. Each purchaser has his own separate and distinct contract and must make a determination as to which terms are important to him. What one purchaser may rely upon in entering into a contract may not be material to another purchaser. It was observed that suitable remedies in the form of individual actions were available, as each purchaser may elect, from actions for breach of contract, cancellation and rescission, or specific performance.
While this class action involves specific performance of an alleged promise made to many contract purchasers rather than a fraud action for money damages, the underlying rationale is identical (see Canell) and the majority opinion in this case is in direct conflict with the decisions in Lance v. Wade, supra, Avila South Condominium Association, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977), and Osceola Groves v. Wiley, 78 So.2d 700 (Fla. 1955).
The final order dismissing second amended complaint, which attempts, in a class action, to obtain specific performance of various oral or implied promises allegedly made to many individual contract purchasers, which promises are unenforceable under the Statute of Frauds, should be affirmed on the authority of Canell, Lance, Avila and Osceola.
NOTES
[1] AMENDED COMPLAINT
Comes now Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually, and THE MOORINGS ASSOCIATION, INC., Class Representation, and sues Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., and would show the following:
COUNT I
1. This is an action for preliminary and permanent injunction.
CLASS REPRESENTATION ALLEGATIONS
a. The Plaintiff, THE MOORINGS ASSOCIATION, INC., is a corporation incorporated under the laws of the state of Florida, incorporated for the purpose of representing homeowners of The Moorings Subdivision in Brevard County, Florida.
b. At all times material hereto the Defendant, TORTOISE ISLAND COMMUNITIES, INC., was a corporation organized under the laws of the state of Florida and engaged in business in Brevard County, Florida.
c. At all times material hereto the Defendant, TORTOISE ISLAND GROUP, LTD., was a corporation organized under the laws of the state of Florida and engaged in business in Brevard County, Florida.
d. The Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., have refused to recognize easement rights of the homeowners of the Plaintiff, THE MOORINGS ASSOCIATION, INC., and have impeded the easement rights of the Plaintiffs by obstructing a navigable canal which formerly connected the Banana River to the Great Canal.
e. Final injunctive relief staying the obstructing of the canal or final declaratory relief concerning the rights of the homeowners in the canal affect all homeowners of The Moorings pursuant to Florida Rules of Civil Procedure (Fla.R.Civ.P.) Rule 1.220(b)(2). An adjudication concerning any homeowner of The Moorings would be dispositive of the interest of all other homeowners in The Moorings as a practical matter pursuant to Fla.R.Civ.P. 1.220(b)(1)(B). Separate adjudication would create incompatible standards for opposition of the class.
f. The Moorings Association, Inc. is a homeowners' association comprised of homeowners residing in the tract of land known as The Moorings in Brevard County, Florida as shown by the plat recorded in Plat Book 20, Page 67 of the Public Records of Brevard County, Florida. The residents of The Moorings Association originally took title from T.O.L., Inc.
g. Condeland Corporation was, at all times material hereto, a Florida corporation which was effectively the parent corporation of T.O.L., Inc. and responsible for the sales of property.
h. Part of the sales presentations to sell lots in THE MOORINGS by Condeland Corporation was the promise to construct an access canal into the Banana River. See attached Exhibit D incorporated herein. (emphasis supplied)
i. After selling some of the lots in THE MOORINGS Condeland Corporation constructed an access canal hereafter known as "THE MOORINGS CUT" for the purpose of all residents of THE MOORINGS. Attached Exhibits A and B reflect the fulfillment of their sales representations.
j. Since approximately 1967 when said canal was completed, most owners of residential lots in THE MOORINGS having boats or marine vessels have utilized said canal for ingress and egress from the Moorings to the Banana River and the Intracoastal Waterway.
k. Upon completion of the construction of "THE MOORINGS CUT" in approximately March, 1967, T.O.L., Inc. and Condeland Corporation expressly granted the canal as an easement to all residents of THE MOORINGS as stated in Exhibit B attached hereto and incorporated herein and recorded in Official Records Book 953, Page 346 of the Public Records of Brevard County, Florida. Other virtually identical instruments were likewise given and recorded in Official Records Book 953, Pages 348, 350, 352, 354, 356 and 358 of the Official Records of Brevard County, Florida and Official Records Book 979, Pages 497, 499, 501 and 503 of the Official Records of Brevard County, Florida.
l. Thirteen easement holders filed suit in Brevard County in case number 75-3074-CA-01 which ultimately resulted in a preliminary injunction being issued allowing Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., to construct a bridge over the canal but the bridge was to be so constructed that it could be moved to accommodate marine traffic.
m. That the thirteen easement holders, being named grantees of easements granted by T.O.L., Inc. and Condeland Corporation, pursued the aforementioned litigation on behalf of the Plaintiffs.
n. The aforementioned litigation resulted in an order dated April 30, 1982 upon which Plaintiffs justifiably relied as to the continued existence and use of "THE MOORINGS CUT" canal with only a lesser interference of navigable rights by virtue of the construction of a moveable bridge.
o. On July 21, 1982 Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., filled in a portion of the canal in violation of the order modifying the injunction of April 30, 1982 and which fill-in has caused irreparable damage to the Plaintiffs' use of the canal for navigable purposes; has lessened the value of the Plaintiffs' property rights; and has caused confusion to the Plaintiffs with respect to the rights which they reasonably were led to believe they had when they purchased the property. The fill-in of that portion of the canal previously used by the Plaintiffs has prevented their access into the Banana River and the Intracoastal Waterway from the Great Canal as has previously been their custom. Said fill-in limits, restricts and prohibits the lawful recreational use of the previously navigable waterway by Plaintiffs in the manner and to the extent that it has been customarily used.
p. All conditions precedent of paragraph 22 of the attached Exhibit C and incorporated herein have been met or complied with and the undersigned, for and on behalf of the other elected members elected by the majority of the residents of THE MOORINGS, has initiated this action for all residents of THE MOORINGS.
q. All residents of THE MOORINGS have the same interest in determining whether an easement exists as to them in the canal that has been obstructed by Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD.
r. The Plaintiffs, THE MOORINGS ASSOCIATION, INC., is comprised of approximately 140 residents of THE MOORINGS. There are approximately 200 residents of THE MOORINGS of which thirteen members were originally given a document recorded in the Official Records of Brevard County as stated in paragraph 1(k).
2. The intent of T.O.L., Inc. and Condeland Corporation was to create an easement appurtenant to THE MOORINGS, not to individual lots within THE MOORINGS, such intent being clearly manifested in attached Exhibits A and B.
3. Due to the facts hereinabove set forth in class representation allegations and incorporated herein, the Plaintiffs, THE MOORINGS ASSOCIATION, INC., are suffering irreparable injury in that they are being daily deprived of the use of a waterway which was given to them as part of their property rights in THE MOORINGS, they have been deprived of the use of their boats and marine vessels; deprived of ingress and egress of their boats into the Intracoastal Waterway; have suffered a diminution in property value; and have been deprived of a valuable property right.
WHEREFORE, Plaintiffs, THE MOORINGS ASSOCIATION, INC., pray as follows:
1. That a temporary injunction be issued against the Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., enjoining and prohibiting any further fill-in of said canal.
2. That a permanent injunction be issued against the Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., enjoining and prohibiting the fill-in of any further part of the canal.
3. That the fill-in already accomplished by the Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., be removed and that the canal be reinstated to its prior condition so that Plaintiffs, THE MOORINGS ASSOCIATION, INC., may continue to use the canal as a navigable waterway.
4. That a constructive trust created by T.O.L., Inc. and Condeland Corporation on behalf of those residents not involved in the litigation described in paragraph 1(1) be declared against the Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., who purchased property with actual and constructive notice of the easement.
COUNT II
Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, reallege and reaver paragraphs 1 through 3 above and further allege as follows:
4. Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., derived their title to the land containing the easement, more fully described in Exhibit B attached hereto, from T.O.L., Inc.
5. The use of the easement constructed by T.O.L., Inc. and Condeland Corporation was created for the permanent benefit and use of all resident owners of THE MOORINGS as indicated by their sales representations and subsequent conduct.
6. THE MOORINGS, created by T.O.L., Inc. and Condeland Corporation, emphasized water recreational pursuits which were accentuated by easy access to the Banana River and were a major consideration in the purchase of a residence in THE MOORINGS by members of THE MOORINGS ASSOCIATION, INC.
7. The subsequent actions by the Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., in depriving Plaintiffs, THE MOORINGS ASSOCIATION, INC., of water access which they previously enjoyed to the Banana River has resulted in diminution in the value of their property.
WHEREFORE, Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, pray as follows:
1. The [sic] the Court issue a declaratory judgment in favor of the Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, declaring that an easement exists as to all resident homeowners of THE MOORINGS.
2. That in the alternative, an easement be granted to THE MOORINGS ASSOCIATION, INC. for an on behalf of all residents of THE MOORINGS.
3. Any other relief as the Court may deem proper in the premises plus cost of this suit.
COUNT III
Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, reallege and reaver paragraphs 1 through 3 of Count I and paragraphs 4 through 7 of Count II and further allege:
8. Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, relied upon representations made to them by agents for Condeland Corporation and T.O.L., Inc. with respect to the construction of an easement providing water access from THE MOORINGS to the Banana River, see Exhibit D attached; that after construction of the canal the residents had a permanent easement; that the easement in the canal had been recorded for their benefit and protection.
9. In reliance upon oral representations and sales brochures, residents of the Plaintiff, THE MOORINGS ASSOCIATION, INC., expended monies to purchase homes within THE MOORINGS.
10. The residents of the Plaintiffs, THE MOORINGS ASSOCIATION, INC., relied upon representations of agents for Condeland Corporation and T.O.L., Inc. that an easement would be constructed providing direct water access to the Banana River from THE MOORINGS; that the residents had a permenent [sic] easement subsequent to the construction of the canal; and that an easement had been recorded for their benefit and protection.
11. Defendants, TORTOISE ISLAND COMMUNITIES, INC. and TORTOISE ISLAND GROUP, LTD., were not bona fide purchasers in that easement canal constructed by Condeland Corporation and T.O.L., INC. was open and visible.
WHEREFORE, Plaintiffs, THE MOORINGS ASSOCIATION, INC., individually and as a class representation, pray as follows:
1. The Court issue a declaratory judgment in favor of the Plaintiffs declaring that an easement exists as to all resident homeowners of THE MOORINGS.
2. That in the alternative, an easement be granted to THE MOORINGS ASSOCIATION, INC. for and on behalf of all residents of THE MOORINGS.
3. Any other relief as the Court may deem proper in the premises plus cost of this suit. [emphasis supplied]
[2] The written sales brochure attached as Exhibit A to the complaint in this case, like that unsuccessfully asserted in the similar case of Katcher v. Sans Souci Company, 200 So.2d 826 (Fla. 3d DCA 1967), does not contain all of the essential elements of the claimed promise to grant an easement and hence fails to meet the requirements of the statute of frauds.
[3] We are not here involved with the distinctly different question as to whether an existing easement appurtenant to a dominant estate is conveyed by implication by the deed conveying the dominant estate under the doctrine that the easement appurtenant "runs with the land." This doctrine is based on an implication from a duly executed written conveyance that complies with the Statute of Frauds. Confusion of this related doctrine with the creation of an easement by implication underlies the several recent district court of appeal cases relied on by the majority opinion, none of which considered the issues considered in this dissent.
[4] When the seller breaches a valid written agreement to convey an easement, the buyer has a possible cause of action against the seller with an election between three basic possible remedies: (1) an action at law for money damages on theories of breach of contract, misrepresentation or fraud, (2) an equitable remedy for rescission or cancellation of the entire agreement and restitution, and (3) an equitable remedy for specific performance to require the seller to convey to the buyer the promised easement. Canell holds that if the equitable cause of action is barred because the agreement is invalidated by the statute of frauds, the buyer cannot retreat to a legal remedy for money damages.
[5] See Tortoise Island Communities, Inc. v. Roberts, 394 So.2d 568 (Fla. 5th DCA 1981).