454 So.2d 23 (1984)
WILLIAMS ISLAND COUNTRY CLUB, INC., Individually and As Managing General Partner of Williams Island Country Club, Ltd., a Florida Limited Partnership, Appellant,
v.
SAN SIMEON AT THE CALIFORNIA CLUB, LTD., a Florida Limited Partnership, and Delta Communities Inc., a Florida Corporation, Appellees.
No. 84-605.
District Court of Appeal of Florida, Third District.
July 24, 1984.
Rehearing Denied September 7, 1984.
Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, and Marlene K. Silverman, David M. Wells and Robert Burlington, Miami, for appellant.
*24 Smith & Mandler, and Steven L. Schwarzberg, Miami Beach, for appellees.
Before SCHWARTZ, C.J., and HUBBART, J., and SHARP, WINIFRED J., Associate Judge.
SHARP, WINIFRED J., Associate Judge.
The issue in this case is whether appellant, Williams Island Country Club, Inc., made a prima facie showing at an evidentiary hearing sufficient to entitle it to a preliminary injunction. Williams sought to establish and preserve an easement for a golf cart path across appellees' entry strip: a block of land approximately 100 feet by 200 feet. The entry strip divides Williams' thirteenth hole green from its fourteenth hole tee. Without an easement leading from the thirteenth hole to the fourteenth, Williams could not operate its eighteen hole golf course, and its condominium and resort developments, which were built around the golf course, and for which the golf course was an important amenity, would be severely damaged. The lower court denied the injunctive relief primarily because there was no recorded easement for the golf cart path. We reverse because we think Williams made a prima facie showing it has an implied easement for a golf cart path across appellees' land. Ladner v. Plaza Del Prado Condominium Ass'n, Inc., 423 So.2d 927 (Fla. 3d DCA 1982), pet. for rev. denied, 434 So.2d 887 (Fla. 1983); Unistar Corporation v. Child, 415 So.2d 733 (Fla. 3d DCA 1982).
The testimony at the hearing established that prior to 1979 the whole of the property, both appellant's golf course and appellees' development tract and entry strip, belonged to Sky Lake Development, Inc. Sky Lake built an eighteen hole golf course, and it used the entry strip for access from the thirteenth to the fourteenth hole for maintenance, and the flow of golfers playing the course. There is no practical or safe alternative route for golf carts to go from the thirteenth to the fourteenth hole other than by crossing the entry strip.[1]
In 1978 Sky Lake entered into a contract to sell the development tract and entry strip to an entity controlled by Harry Peisach. The contract stated that when sold, the grantee would give Sky Lake "certain reasonable easements for golf carts and maintenance." No specific easements were described in the contract or shown on the master plan attached to it. Burt Haft, president of Sky Lake, testified both parties to the contract intended that when the construction plans for the development tract and entry were set, an express easement would be granted for the golf cart path.
In 1980, the development tract and entry strip were sold to Nobata, N.V., another entity controlled by Harry Peisach. At that time the golf cart path was paved. It was nine feet wide, and was in constant use by golfers and maintenance workers. It was clearly visible from the development property, the four lane road bordering the entry strip, and the golf course.
When Williams purchased the golf course in 1983, its president was told that Williams had an easement across the entry strip for golf carts. Mr. Peisach agreed. But rather than developing the property himself, he entered into a contract to sell it to San Simeon At the Club, Ltd., one of the appellees.
A principal of San Simeon, Mr. Antin, called Haft four months before its purchase of the property from Nobata N.V., to obtain a copy of the plat of the golf course, which surrounded the development property. Haft reminded him about the golf cart easement across the entry strip. Mr. Antin replied, "No problem."
San Simeon purchased the development tract and entry strip in January of 1984. A dispute arose over the golf cart easement. *25 When no agreement was reached, San Simeon bulldozed the cart path and blocked access at any point over the entry strip.
An easement, such as the golf cart path in this case, may be created by implication.[2] When land is owned originally by the same owner, and part of the land is used for the benefit of another part, such use is termed a "quasi-easement," and it may become an implied easement when either part is severed from the other.[3]
The easement may be created by implied reservation, as in this case, when the servient tenement is sold to a third party, or by implied grant, when the dominant tenement is sold.
Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law. Similarly, where the owner of property, one part of which has been subjected to such a use for the benefit of another part, sells both parts to different purchasers, the respective portions granted are subject to or benefited by, as the case may be, an easement corresponding to such use.
25 Am.Jur.2d Easements § 27 (1966). The majority view is that little distinction is made between implied grants and implied reservations. 25 Am.Jur.2d Easements §§ 33, 21 (1966). But see Winthrop v. Wadsworth, 42 So.2d 541 (Fla. 1949) (dictum).
The rationale supporting implied easements is the court's conclusion that the parties must have intended to grant or reserve an easement as part of the conveyance of land based on the circumstances at the time of the conveyance. Restatement of Property § 476 (1944); 3 H. Tiffany, Real Property § 780 (3d ed. 1939). First, the use of the land for the easement must be apparent or visible, or reasonably discoverable at the time the unity of title was severed.[4] Here the golf cart path was in existence and use, and was paved at the time of the conveyance to Nobata, N.V. Second, the use must be such that a permanent use was intended. 25 Am.Jur.2d Easements § 31 (1966). Here, testimony of the original parties, and language in their contract supports the inference that a permanent golf cart easement was intended. Restatement of Property § 476 (1944).
Finally, the easement must be reasonably necessary for the use and benefit of the dominant tenement. 25 Am.Jur.2d Easements §§ 24, 33 (1966); 28 C.J.S. Easements § 33 (1941). Strict necessity need not be shown.[5] In this case a sufficient showing of need was made by establishing that without the golf cart easement, the dominant tenement could no longer be used as an eighteen hole golf course, its use at the time of severance of the servient tenement.
Whether or not a remote or subsequent grantee of the servient tenement is bound by an implied easement depends on whether he has notice of the dominant tenement's easement rights.[6] In Kirma v. Norton, 102 So.2d 653 (Fla. 2d DCA 1958), a subsequent grantee of the servient tenement was held bound by a sewer pipe easement which crossed his land and emptied into a river. Even though the pipes were underground, the court held the emergence of the pipes from the river bank should have put a prudent buyer on notice to *26 inquire, and he was, therefore, bound by what he would have learned.[7]
In this case, Williams established a sufficient physical presence and use of the golf cart easement at the time San Simeon purchased the servient tenement to impose on it a duty of inquiry. Further, Williams established actual knowledge of the easement by San Simeon's principal, before its purchase. Under either theory, appellant could prevail.
For the reasons stated in this opinion, we reverse the lower court's denial of a preliminary injunction and we direct that an appropriate injunction be entered to preserve the status quo of the easement pending a final determination on the merits.
REVERSED AND REMANDED.
NOTES
[1] One suggested alternative route was to have the golfers cross a busy four lane highway, run along the sidewalk some 200 feet, and cross again to reach the fourteenth tee. Another was to run backwards against the flow of play a considerable distance, circumventing the balance of appellees' development tract.
[2] Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926); Kirma v. Norton, 102 So.2d 653 (Fla. 2d DCA 1958).
[3] 3 H. Tiffany, Real Property, §§ 779, 781 (3d ed. 1939); Restatement of Property, § 474 (1944).
[4] 25 Am.Jur. Easements § 30 (1966); Kirma v. Norton, supra.
[5] See Fender v. Schaded, 420 S.W.2d 468 (Tex. App. 1967); Evich v. Kovacevich, 33 Wash.2d 151, 204 P.2d 839 (1949).
[6] 28 C.J.S. Easements § 47 (1941).
[7] See also Rafkind v. Beer, 426 So.2d 1097 (Fla. 3d DCA 1983); Florida Power & Light Co. v. Rader, 306 So.2d 565 (Fla. 4th DCA 1975); Maule Industries, Inc. v. Sheffield Steel Products, Inc., 105 So.2d 798 (Fla. 3d DCA 1958), cert. denied, 111 So.2d 41 (Fla. 1959); 20 Fla.Jur.2d Easements § 7 (1980).