884 So.2d 1039 (2004)
ONE HARBOR FINANCIAL LIMITED COMPANY, Appellant,
v.
HYNES PROPERTIES, LLC, Appellee.
No. 5D03-3629.
District Court of Appeal of Florida, Fifth District.
October 15, 2004.
*1041 David G. Larkin and Jesse L. Kabaservice of Fallace & Larkin, L.C., Melbourne, for Appellant.
Alfred A. Lasorte, Jr., of Shutts & Bowen LLP, West Palm Beach, for Appellee.
PETERSON, J.
One Harbor Financial Limited Company, ("One Harbor"), appeals a final judgment quieting title to property owned by Hynes Properties, LLC, ("Hynes").
One Harbor and Hynes own title to adjoining parcels of land and deraign title from the same remote grantor, Paul M. Hoffenberg. Hoffenberg had acquired the two parcels by separate deeds in which his name appeared as grantee followed by the words "as trustee" or "trustee."
At some time prior to August 19, 1986, Hoffenberg constructed a 75,000 square foot building on the parcel now owned by One Harbor. In an attempt to meet the then-existing zoning regulations which required thirteen additional parking spaces to that available on the parcel, on August 19, 1986, Hoffenberg "individually and as trustee," executed an easement agreement, ("Agreement"), that purported to convey a perpetual, non-exclusive easement for thirteen parking spaces along with a twenty-foot strip of land to be used for ingress and egress, from the adjacent New Haven Avenue to those parking spaces upon the property now owned by Hynes in favor of the property now owned by One Harbor. In the Agreement, Hoffenberg was identified as both the grantor and grantee. Two days later, on August 21, 1986, Hoffenberg "individually and as trustee" conveyed the parcel now owned by Hynes to Curtis Hendrix without making any reference to the easement.[1] The Agreement was duly recorded on August 29, 1986[2] and use of the easement began on or about August 21, 1986, and has continued ever since.
Through subsequent conveyances, Hynes acquired title to the parcel purported to be encumbered by the easement. Aware of the easement, Hynes purchased the property on the advice of counsel that the underlying Agreement was invalid and the easement unenforceable. Hynes then filed a quiet title action seeking to eliminate the easement from its title so that it could construct a building that would encroach upon the area described in the Agreement. The complaint alleged that the Agreement was invalid because title to the dominant estate (currently owned by One Harbor), and the servient estate (currently owned by Hynes) were held by the *1042 same person (Hoffenberg) at the time of the creation of the easement, rendering the Agreement void under Florida law.
One Harbor's answer admitted that Hoffenberg owned both properties "individually and as trustee" at the time the Agreement was executed, but asserted that the easement was valid because the grantee and grantor did not maintain the same indicia of title and ownership as to both properties. Additionally, One Harbor argued that even if the Agreement was deemed invalid as drafted, an easement over Hynes' property existed as the result of an implied reservation from a pre-existing use. Because all predecessors in interest to Hynes and One Harbor acknowledged the existence of the easement over Hynes' property, One Harbor further asserted that Hynes is equitably estopped from denying the validity of the easement because Hynes purchased the parcel with full knowledge of the Agreement regarding the easement and was aware that One Harbor claimed an interest in Hynes' property. One Harbor also counterclaimed seeking to quiet title to the easement and alleging that as a result of Hoffenberg's pre-existing use, One Harbor acquired an easement by implied reservation and that as a result of continued use by One Harbor and its predecessors in interest, One Harbor acquired an easement by prescription.
The trial court specifically found that Hoffenberg took title to each parcel "individually and as trustee," that no trust or beneficiary was identified in any conveyance of either parcel, and that there was no evidence that a trust relating to either parcel was ever recorded. The trial court applied the provisions of section 687.07, Florida Statutes (1959), and concluded, inter alia, that Hoffenberg was the fee simple "individual" owner of each parcel at the time that the Agreement was executed.[3] The trial court also found that at the time the Agreement was recorded Hoffenberg owned both parcels of land.[4] Because the Agreement purported to convey an easement from Hoffenberg, as both grantor and grantee, the trial court held that Hoffenberg's attempt to create an easement over his own property was void *1043 ab initio. The trial court further held that One Harbor neither proved the establishment of an easement by prescription nor an implied easement because the equitable arguments raised were not supported by the facts, the record or the law. We agree with the trial court's findings.

APPLICATION OF SECTION 687.07, FLORIDA STATUTES
In reaching its decision, the trial court applied section 689.07, Florida Statutes (1959).[5] Section 689.07 provides:
(1) Every deed or conveyance of real estate heretofore or hereafter made or executed in which the words "trustee" or "as trustee" are added to the name of the grantee, and in which no beneficiaries are named, the nature and purposes of the trust, if any, are not set forth, and the trust is not identified by title or date, shall grant and is hereby declared to have granted a fee simple estate with full power and authority in and to the grantee in such deed to sell, convey, and grant both the legal and beneficial interest in the real estate conveyed, unless a contrary intention shall appear in the deed or conveyance; provided, that there shall not appear of record at the time of recording of such deed or conveyance, a declaration of trust by the grantee so described declaring the purposes of such trust, if any, declaring that the real estate is held other than for the benefit of the grantee.
The purpose of section 689.07 is to protect persons who rely upon the public land records to ascertain title to real property when a beneficiary's interest is not disclosed in the grantor/grantee index by either the deed transferring title or a recorded declaration of trust. In re Schiavone, 209 B.R. 751 (Bkrtcy.S.D.Fla.1997). The statute prevents "secret trusts" that impede the exchange of marketable title by vesting both the legal and beneficial interest in the trustee, unless a contrary intention appears in the deed or conveyance, or a declaration of trust is recorded. The statute also permits any person to record a declaration of trust before or after the recordation of the deed.[6]
Because the deeds used in the initial conveyance of the parcel to Hoffenberg did not identify either trust, name the trust beneficiaries or state the nature or purpose of either trust, and because a declaration of trust was never recorded under section 689.07, the trial court was correct in finding that Hoffenberg owned each parcel in fee simple absolute. See, e.g., Zosman v. Schiffer, 697 So.2d 1018 (Fla. 3d DCA 1997) (recognizing language referring to the owners as trustees did not change the nature of the transaction); Terry v. Zaffran, 483 So.2d 526 (Fla. 5th DCA 1986) (holding that without a declaration of trust being recorded or any beneficiary specifically named, the words "as trustee" in an instrument of conveyance do not encumber or effect a grantee's individual ownership of real estate); Glusman v. Warren, 413 So.2d 857 (Fla. 4th DCA 1982) (holding that where grantee was named as trustee without identification of the beneficiaries or the nature and purposes of the trust and no trust agreement *1044 of record was identified, the grantee received fee simple title).

AGREEMENT VOID AB INITIO

Under Hensel v. Aurilio, 417 So.2d 1035 (Fla. 4th DCA 1982), Hoffenberg never had the legal ability to grant an easement over his own property. In Hensel, the appellant acquired title to lots A, B, C and D. Appellant later sold lots B, C and D to appellee. Thereafter, the parties entered into a written contract which provided that lot B was to be repurchased by appellant. As originally drawn, that contract provided for an easement to be retained by appellee over a portion of lot B. At appellant's insistence, that provision was deleted prior to execution of the contract. However, on the day of the closing, appellee secretly prepared an easement subjecting lot B to an easement in favor of lot D, and subsequently recorded the deed. The court held that appellee could not, while owner of both the dominant estate (lot D) and servient estate (lot B), carve out an easement by grant to himself. No other reported Florida case has specifically addressed the issue of whether one who owns adjoining, unencumbered parcels in the same right, may create an easement over one parcel in favor of the other, but several other state and federal courts have disapproved of such action. See, e.g., Mattos v. Seaton, 839 A.2d 553 (R.I.2004) (holding no easement can be created over a section of land in favor of another adjoining parcel when one owner owns both properties); Mikels v. Rager, 232 Cal.App.3d 334, 284 Cal. Rpt. 87 (Cal.App. 4 Dist.1991) (holding one cannot grant an easement to oneself; one can only reserve such interest in land granted to another); Hayes v. Moreau, 104 N.H. 124, 180 A.2d 438 (1962) (recognizing that while all of the tract was in common ownership of a single owner, no easement could arise in favor of one lot in tract over another lot); Hidalgo County Water Control and Imp. Dist. No. 16 v. Hippchen, 233 F.2d 712 (C.A.5 Tex.1956) (recognizing that for an easement to exist the dominant and servient estates must be held by different owners); Marshall v. Callahan, 241 Mo.App. 336, 229 S.W.2d 730 (1950) (recognizing that to acquire an easement there must be a dominant and a servient estate and they must not be lodged in the same person); Goldstein v. Beal, 317 Mass. 750, 59 N.E.2d 712 (1945) (holding that where there is common ownership of two parcels, there could be no easement in favor of one lot operating as a burden to the other); Magnolia Petroleum Co. v. Caswell, 1 S.W.2d 597 (Tex.Com.App.1928) (recognizing that one cannot have an easement in his own land); Bales v. Butts, 309 Mo. 142, 274 S.W. 679 (1925) (recognizing that as long as the lots belonged to the same owner, there could be no easement in favor of one lot, or servitude upon the other).
An easement, by definition, is the right to use land owned by another. Black's Law Dictionary 527 (Bryan A. Garner ed., 7th ed. West 1999). This court made clear that that right exists in one other than the owner of the land to use land for some particular purpose or purposes. (Emphasis added.) Dean v. MOD Properties, Ltd., 528 So.2d 432, 433 (Fla. 5th DCA 1988). Hoffenberg, as fee simple owner of both parcels, did not possess the legal right to grant an easement over his own property. Accordingly, the Agreement was void ab initio.

IMPLIED EASEMENT
An easement is a real property interest subject to the statute of frauds, and apart from prescription, requires a writing for its creation. Dotson v. Wolfe, 391 So.2d 757, 759 (Fla. 5th DCA 1980). The Florida Supreme Court has recognized *1045 only two circumstances where an easement will be implied. See Tortoise Island Communities, Inc. v. Moorings Ass'n, Inc., 489 So.2d 22 (Fla.1986) (adopting Judge Cowart's dissent in Moorings Ass'n, Inc. v. Tortoise Island Communities, Inc., 460 So.2d 961 (Fla. 5th DCA 1984)). The first circumstance implies an easement from terms contained in a "duly executed" writing that is ambiguous, but otherwise valid. Id. The second circumstance implies an easement from a factual situation giving rise to the creation of a way of necessity as a matter of public policy and is not an issue in the instant case. Id.
One Harbor asserts that if the Agreement is deemed invalid, it still maintains an easement over Hynes' property by implied reservation through a pre-existing use. Under the holding in Tortoise Island, to imply such an easement, the implication must arise from a "duly-executed" writing. It necessarily follows that the writing from which such an easement is implied must itself be a valid legal instrument.
Documents that convey easements are subject to the same rules of construction as other contracts and should be interpreted using contract principles. See, e.g., Los Angeles County v. Wright, 107 Cal.App.2d 235, 236 P.2d 892 (1951); Percy A. Brown & Co. v. Raub, 357 Pa. 271, 54 A.2d 35 (1947); U.S. v. Sea Gate, Inc., 397 F.Supp. 1351 (D.C.N.C.1975). The right to contract is subject to the limitation that the agreement must be legal. In general, Florida courts are under no obligation to discern the intent of the parties from language contained within an illegal contract. E.g., Katz v. Woltin, 765 So.2d 279 (Fla. 4th DCA 2000) (recognizing that where a contract is illegal, no action may be brought on it, whether in law or in equity); Castro v. Sangles, 637 So.2d 989 (Fla. 3d DCA 1994) (holding that no action may be maintained on an illegal agreement). Here, the Agreement is invalid on its face because it attempts to create an easement over one parcel in favor of an adjacent parcel, the titles to which were simultaneously owned by Hoffenberg.
One Harbor's reliance on this court's ruling in Martin v. Kavanagh, 773 So.2d 1250, 1253 (Fla. 5th DCA 2000), is misplaced because a valid writing sufficient to satisfy the statute of frauds was present in that case. Similarly, One Harbor's reliance on Williams Island Country Club, Inc. v. San Simeon at the California Club, Ltd. 454 So.2d 23 (Fla. 3d DCA 1984), is misplaced because in implying an easement by reservation from a pre-existing use, the court interpreted ambiguous terms contained in an otherwise valid contract. We agree that if the Agreement were otherwise valid but contained ambiguous terms, this court could interpret its terms to give effect to the express intent of the parties. But invalidity, not ambiguity, is the issue. Both parties agree, and the trial court specifically found that the Agreement was intended to create the easement. With no other valid instrument from which to infer the intent of the parties, this court cannot create an easement by implication, notwithstanding the temptation to do so in view of the circumstances involved in this case.
One Harbor urges this court to employ its equitable powers to give effect to the intent of the parties in view of fifteen years of uncontested use of the property, and to declare the easement valid, but such remedy is beyond this court's power. Courts of equity simply have no power to issue rulings which they consider to be in the best interest of justice without regard to established law. E.g., Flagler v. Flagler, 94 So.2d 592 (Fla.1957); see also Florida High School Athletic Ass'n v. Melbourne *1046 Central Catholic High School, 867 So.2d 1281 (Fla. 5th DCA 2004) (recognizing that courts of equity do not have any right or power to issue such orders as they consider to be in the best interest of "social justice" at the particular moment without regard to established law). We share the trial court's reservations regarding the fairness of its ruling but the law compels such a result.

EASEMENT BY PRESCRIPTION
It is uncontested that use of the easement began on August 21, 1986 and has continued ever since. Because the statutory twenty-year period required to obtain an easement by prescription had not run prior to the filing of this action on June 18, 2001, no easement arose through prescription. See, e.g., Downing v. Bird, 100 So.2d 57 (Fla.1958); Crigger v. Florida Power Corp., 436 So.2d 937 (Fla. 5th DCA 1983).
One Harbor has exhausted its inventory of theories to establish the validity of the attempt by Hoffenberg to establish an easement, and we agree with the trial court that none of those theories can support its position. Therefore, we must affirm the judgment quieting title.
AFFIRMED.
THOMPSON, J., and SMITH, C. M., Associate Judge, concur.
NOTES
[1] The record does not disclose whether Hendrix had or did not have notice of the easement when he acquired title and the concept of the bona fide purchaser for value without notice is not an issue in this appeal.
[2] The record is unclear as to when the Agreement was recorded. Appellant's initial brief indicates that the Agreement was recorded on August 20, 1986. During a hearing on January 4, 2002, counsel for the Appellant stated that the Agreement was recorded on August 29, 1986. The Agreement appears to be date stamped on August 29, 1986.
[3] An estate in fee simple can only be held in severalty. See 4 Thompson on Real Property § 1770 (1979) (citing In re Sullivan's Estate, 121 Colo. 494, 218 P.2d 1064 (1950)). There can be but one estate in fee simple to a particular described tract of land. See 28 Am. Jur 2d Freehold Estates § 13 (2000) (citing Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296 (1923)). Accordingly, we note that the use of the term "individual" is redundant and unnecessary in the order on appeal.
[4] The trial judge also held that Hoffenberg was the owner of the fee simple title of each parcel at the time that the Agreement was executed, yet noted that the properties had merged upon their initial conveyance to Hoffenberg. One Harbor disagrees, stating that because the properties were never owned under a common deed, and were acquired at different times, under different documents, the properties did not merge. One Harbor is correct, but for the wrong reason. The merger doctrine is applied to separate parcels owned by the same individual in the same right where there is an existing easement that creates both a dominant and a servient estate. See, e.g., Lacy v. Seegers, 445 So.2d 400 (Fla. 5th DCA 1984). An otherwise valid easement may be extinguished as a matter of law through the doctrine of merger when ownership of the dominant and servient estates becomes united in one person. Id. Here, it cannot be said as a matter of law that either of the parcels initially conveyed to Hoffenberg were a "greater estate" or a "lesser estate," as both were initially conveyed to Hoffenberg in fee simple. Nor can it be said that one parcel was servient to the other because the alleged easement was not formed until several years after the land was conveyed to Hoffenberg. Accordingly, we do not believe that the application of the merger doctrine in this case was appropriate.
[5] The trial court likely reviewed the statute as amended in 1959. The 1959 amendment added sections (2) through (5) and provided the grantee with the additional authority in section (1) to "encumber" the legal and beneficial interest. Prior to the amendment, the proviso now in section (1) required the declaration of trust to "appear of record." The provision was expanded by the amendment to read "appear of record among the public records of the county in which the real property is situated."
[6] § 689.07(4), Fla. Stat. (2003).