# Third District Court of Appeal

## State of Florida

Opinion filed February 22, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2117
Lower Tribunal No. 20-8291
_____

**AFP 103 Corp.,**
Appellant,

vs.

**Common Wealth Trust Services, LLC,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Valerie R. Manno Schurr, Judge.

Carlton Fields, P.A., Christopher W. Smart (Tampa), Dean A. Morande (West Palm Beach), Jose A. Loredo, Rachel A. Oostendorp and Michael G. Zilber, for appellant.

Silver Law, P.A., and Scott A. Silver; Russo Appellate Firm, P.A., and Paulo R. Lima, for appellee.

Mrachek Fitzgerald Rose Konopka Thomas & Weiss, P.A., and Manuel Farach (West Palm Beach), for Florida Land Title Association, Inc., as amicus curiae.

Ausley McMullen, and Benjamin B. Bush (Tallahassee), for Florida Home Builders Association, as amicus curiae.

Before FERNANDEZ, C.J., and MILLER, and BOKOR, JJ.

FERNANDEZ, C.J.

Defendant AFP 103 Corporation ("AFP") appeals the trial court's "Order Granting Third-Party Plaintiff Common Wealth Trust's Motion for Final Summary Judgment," as well as the trial court's Order denying AFP's Motion for Rehearing or Reconsideration. For the following reasons, we affirm the order granting Common Wealth Trust's motion for final summary judgment. as well as the trial court's order denying AFP's motion for rehearing/reconsideration.[1]

## FACTS AND PROCEDURAL HISTORY

In 1981, Miami-Dade County approved the site plan for the property in the underlying case. In 2004, South Florida Hotel, Inc., ("South Florida Hotel") a Florida corporation, was the fee simple title owner to all the land in question in the underlying action. On March 29, 2004, South Florida Hotel executed and recorded a "Declaration of Restrictive Covenants in Lieu of Unity of Title." The Declaration stated that the parcels would be subdivided

---

[1] AFP made no arguments in its Initial Brief or Reply Brief concerning the trial court's order denying AFP's motion for rehearing or reconsideration with regard to MIMM. Thus, we do not address it.

2

into two separate lots: the "Non-Condominium Lot" and the "Mart Condominium Lot." It further stated that South Florida Hotel intended to develop the Mart Condominium Lot "as a condominium and sell individuals units therein." The Declaration indicated that title to the Non-Condominium Lot and the Mart Condominium Lot "will not remain in single ownership and [South Florida Hotel] is therefore executing this instrument in order to assure the County that the development of the Property with future multiple ownership will not violate the Zoning Code of Miami-Dade County." This Declaration of Restrictive Covenants in Lieu of Unity of Title further stated, in part:

> In the event of multiple ownership subsequent to site plan or amended site plan approval, each of the subsequent owners … shall be bound by the terms, provisions, and conditions of this instrument. Owner further agrees that it will not convey portions of the Property to such other parties unless said portions of the Property are bound by, and subject to, the Master Covenants, which for purposes hereof Article Four of the Master Covenants shall be deemed to be the "Easement and Operating Agreement" required by Section 33-257 of the Code of Miami-Dade County. . .

Thereafter, on April 30, 2004, South Florida Hotel recorded the "Declaration of Covenants, Conditions, Restrictions, Easements and Operating Agreement for Miami International Merchandise Mart, Hotel, Plaza and Convention Center" ("Declaration of Covenants"). In that document, South Florida Hotel stated:

3

South Florida Hotel intends on selling individual Condominium Units . . . located within the Mart Condominium Lot to multiple purchasers. Further, [South Florida Hotel] may decide to further subdivide the Non-Condominium Lot in the future. Consequently, the Non-Condominium Lot and the Mart Condominium Lot will be under separate ownership. Accordingly, [South Florida Hotel] desires to grant and crate, on the terms and conditions hereinafter set forth, the cross easements and covenants hereinafter set forth in favor of and appurtenant to the Mart Condominium Lot and the Non-Condominium Lot, all as more particularly provided for herein.

Paragraph F of the Declaration of Covenants also referred to Miami-Dade

County Ordinance section 33-257, where it stated:

[South Florida Hotel] entered into that certain Declaration of Restrictive Covenants in Lieu of Unity of Title recorded March 29, 2004… Paragraph 3 of such Covenant in Lieu and Miami-Dade County Code Section 33-257 requires [South Florida Hotel] to create an "Easement and Operating Agreement" as a condition to multiple ownership of The Properties . . . Article Four hereof shall serve as the required "Easement and Operating Agreement."

In addition, Article 4.2 of the Declaration of Covenants provided:

4.2 **Parking within the Shared Essential Components**. All of the parking areas that are intended to be used by Condominium Unit Owners and their guests, tenants, employees, licensees and invitees, are located within the Shared Essential Components which are part of the Non-Condominium Lot. Declarant, as the initial NCL Owner [Non-Condominium Lot Owner], shall have, and hereby reserves unto the NCL Owner, the exclusive right at any time, to grant to specific Condominium Unit Owners or other Owners or occupants of The Properties or to the Master Association or to any Condominium Association the exclusive right to use one or more of such parking spaces….NCL Owner shall accommodate, within the Shared Essential Components, the reasonable parking needs of the Mart Condominium Lot

4

which may be met by designation, assignment, valet parking or otherwise. . .

Furthermore, Article 4.3 stated, in part:

> 4.3 Easements for Vehicular and Pedestrian Ingress/Egress over portions of the Shared Essential Components and Shared Facilities. …Declarant for itself and as the initial NCL Owner, hereby reserves and covenants for itself and for all future Owners of Lots within The Properties…and for all Condominium Unit Owners…, that the Declarant, all Owners and all Condominium Unit Owners…, shall have (a) a non-exclusive easement for vehicular ingress and egress over all private streets and roadways located from time to time within the Shared Essential Components…, and (b) a non-exclusive easement for pedestrian access over all lobbies, paths, walkways and stairwells located from time to time within the Shared Essential Components or the Shared Facilities which serve or are intended for the use of the Mart Condominium Lot, the Condominium Unit Owners or the general public….

Also, Article 4 provided that according to Miami-Dade County Code of Ordinance section 33-257, South Florida Hotel "shall obtain the written approval of the Office of the County Attorney prior to recording any Supplemental Declaration in the Public Records of the County which amends or modifies the provisions of this Article 4." South Florida Hotel is the only entity that signed the Declaration of Covenants.

On October 3, 2005, South Florida Hotel executed a Warranty Deed and recorded it on October 12, 2005. With this Warranty Deed, South Florida Hotel conveyed all of the Mart Condominium and a portion of the Non-Condominium Lot. The Non-Condominium Lot was divided into the

5

Undeveloped Lot and the Convention Lot. The buyer/grantee of the Condominium Lot and the Convention Lot was a corporation known as SF Hotels, Inc. Along with the land, the Warranty Deed alleged to convey South Florida Hotel's "rights pursuant to that Declaration of Covenants, Conditions, Restrictions, Easements and Operating Agreement for Miami International Merchandise Mart, Hotel, Plaza and Convention Center, dated April 29, 2004 … as modified by the Supplemental Declaration of Covenants and Conditions, dated September 30, 2005, to be recorded in the Public Records of Miami-Dade County, Florida prior to or concurrently with this deed."

On November 1, 2005, South Florida Hotel recorded a Supplemental Declaration to the Declaration of Covenants, Conditions, Restrictions, Easements and Operating Agreement for Miami International Merchandise Mart, Hotel, Plaza and Convention Center." The first paragraph of the Supplemental Declaration states that it "is made as of the ___ day of September, 2005, by SOUTH FLORIDA HOTEL INC., a Florida corporation…." All three signature pages state, "The foregoing instrument was acknowledged before me this ___ day of September, 2005, …." It was signed only by South Florida Hotel. It was also signed, on pages labeled "Consents," by two entities associated with the Condominium Lot: "MIMM Master Association, Inc." and "MIMM Condominium Association, Inc." The

Supplemental Declaration was not signed by SF Hotels, Inc., who was the grantee of the Condominium Lot and the Convention Lot. Furthermore, no subsequent property owner signed the Supplemental Declaration.

The Supplemental Declaration further stated: "Declarant desires to supplement, modify and amend the Declaration…(b) to allocate certain rights and obligations between the owners of [the Convention and Undeveloped] Lots, (c) to provide for all of the rights of the Declarant and the NCL owner to remain with the Owner of the [Convention] Lot, and (d) as otherwise set forth herein." The Supplemental Declaration alleged to modify portions of Article 4 of the Declaration of Covenants, which is the "Easement and Operating Agreement" (amending Articles 4.1(a) and 4.2). In addition, with respect to parking, the Supplemental Declaration tried to amend the Declaration of Covenants. The Supplemental Declaration required the Undeveloped Lot owner to maintain a minimum number of parking spaces for the other parcels to use. This condition was not present in the original April 30, 2004 Declaration of Covenants. The undated Supplemental Declaration was recorded on November 1, 2005.

On August 11, 2009, AFP acquired the Convention Lot from SF Hotels, Inc. Almost ten years later, on June 27, 2019, Common Wealth acquired the Undeveloped Lot from South Florida Hotel after foreclosure. Thus, when the

7

proceedings below began, Common Wealth owned the Undeveloped Lot, and AFP owned the Convention Lot. The Condominium Lot was owned by multiple individual condominium unit owners, who are represented by the MIMM Condominium Association ("MIMM").

In February 2020, Common Wealth put a fence around the Undeveloped Lot. MIMM's counsel mailed a letter to Common Wealth's counsel alleging that condominium owners were allowed to park on the Undeveloped Lot and demanded that they be granted access. Common Wealth's counsel responded in March 2020 that the easement claimed by MIMM was invalid.

Thereafter, in a related proceeding between MIMM and Common Wealth, MIMM sued Common Wealth in April 2020 for damages, declaratory and equitable relief. MIMM sued, in part, for a declaratory judgment that Common Wealth had a duty "to maintain the Undeveloped Lot for [MIMM's] use as a parking lot of no less than 583 spaces" and requested that Common Wealth be required to remove all barriers surrounding the lot. Common Wealth moved to dismiss the complaint for failure to state a claim, which the trial court granted without prejudice for MIMM to file an amended complaint. MIMM filed an amended complaint in October 2020. On December 22, 2020, MIMM's counsel moved to withdraw as counsel due to irreconcilable

8

differences. While the motion to withdraw was pending, Common Wealth filed a Counterclaim on December 29, 2020. The Counterclaim alleged one claim to quiet title and sought as relief, in part, to "quiet and remove any and all clouds on title with respect to MIMM's purported easement rights in the Undeveloped Lot." Common Wealth also moved for a summary judgment on January 7, 2021.

On January 29, 2021, while MIMM's counsel's motion to withdraw was still pending, MIMM filed its Answer and Affirmative Defenses to Common Wealth's counterclaim. In February 2020, the trial court granted the motion to withdraw and gave MIMM twenty days to hire new counsel. The record on appeal does not show whether MIMM hired new counsel or not. On March 23, 2021, after the deadline for MIMM to secure new counsel passed, the trial court held a hearing on Common Wealth's motion for summary judgment. The trial court entered final summary judgment for Common Wealth on MIMM's direct claim against Common Wealth, as well as on Common Wealth's counterclaim against MIMM. MIMM did not appeal this judgment.

Thereafter, on April 21, 2021, Common Wealth filed a Third-Party Complaint against AFP to clear up any alleged easement rights that AFP might claim in Common Wealth's Undeveloped Lot. The Third-Party

Complaint requested that the court enter judgment against AFP to remove any clouds on title regarding AFP's purported easement rights in the Undeveloped Lot. Common Wealth also filed a motion for summary judgment against AFP contending it was entitled to judgment because there were no genuine issues of material fact regarding 1) the invalid easement documents that AFP might rely upon in support of its claim; and 2) South Florida Hotel's failure to comply with the necessary conditions precedent that were required by the easement documents to convey easement rights.

Next, AFP filed its Answer, Affirmative Defenses, and Counterclaim on June 21, 2021. In its counterclaim, AFP sought a declaration that AFP had the right of access to the Undeveloped Lot for ingress and egress, as well as for parking. It further sought a declaration that Common Wealth was required to maintain the Undeveloped Lot for AFP to use as a parking lot of at least 583 spaces.

On August 5, 2021, AFP filed its opposition to Common Wealth's motion for summary judgment. Also on August 5, 2022, AFP filed a Motion for Rehearing and Reconsideration requesting that the trial court reconsider its April 7, 2021 order entering final summary judgment against MIMM, which MIMM never appealed. After holding a hearing in August 2021, the trial court denied AFP's rehearing motion due to procedural issues with timing and

AFP's standing to file such a motion. The trial court entered its written order on August 25, 2021.[2]

On August 25, 2021, the trial court held a hearing on Common Wealth's motion for summary judgment. After hearing counsels' arguments, the trial court granted Common Wealth's motion. The court entered its written order on September 30, 2021, granting final summary judgment to Common Wealth on its complaint against AFP, as well as on AFP's counterclaim against Common Wealth. The trial court stated:

> [T]here are no disputed issues of material fact on Common Wealth Trust's Third-Party Complaint or on AFP's Counterclaim because: (1) AFP did not establish or ever prove that it had easement rights due to the invalidity of the Easement Documents; and (2) the original grantor's failure to comply with necessary conditions precedent required by the Easement Documents to properly create or convey easement rights.

AFP did not move for rehearing, but then filed this appeal. AFP also appeals the trial court's October 6, 2021, order denying AFP's motion for reconsideration and rehearing, which dealt with the summary judgment the trial court entered against MIMM.

## ANALYSIS

---

[2] AFP sought reconsideration of this order, which the trial court denied on October 6, 2021.

Because this is an appeal from a final judgment based on an order granting summary judgment, this Court applies a *de novo* standard of review. Volusia Cty., v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

AFP first argues that the trial court erred in granting summary judgment to Common Wealth because the easement documents and deeds are valid and enforceable. However, the rule in Florida is that one cannot, while being owner of both a dominant and servient estate, grant an easement to oneself in one's own property. One Harbor Fin. Ltd. Co. v. Hynes Properties, LLC, 884 So. 2d 1039 (5th DCA 2004); Hensel v. Aurilio, 417 So. 2d 1035, 1038 (Fla. 4th DCA 1982); Morris v. Garcia, 224 So. 2d 268 n. 1 (Fla. 3d DCA 2017).

In One Harbor, Hoffenberg, a property owner, built a 75,000 square-foot building on one of two adjacent parcels of land that he owned. The parcel of land with the building was now owned by One Harbor Financial Limited Company ("One Harbor"), the defendant. One Harbor, 884 So. 2d at 1041. Hoffenberg needed to comply with zoning regulations that required thirteen additional parking spots for his new building, so he executed an "easement agreement" that alleged to create a parking easement on the adjacent parcel of land that he owned. Id. Hoffenberg is the only party that signed the

12

"easement agreement." Id. He then sold the parcel with the alleged parking easement (the servient parcel) without referencing the easement and recorded the "easement agreement" eight days after he sold the parcel. Id. The trial court found that at the time the agreement was recorded, Hoffenberg owned both parcels of land, thus Hoffenberg's attempt to create an easement over his own property was *void ab initio*. Id. at 1042-43. One Harbor appealed, and the Fifth District Court of Appeal affirmed. The appellate court held, "Hoffenberg, as fee simple owner of both parcels, did not possess the legal right to grant an easement over his own property." Id. at 1044. Similarly, here, because South Florida Hotel was the fee simple owner of all the parcels, it did not possess the legal right to grant an easement over its own property to itself.

In addition, Miami-Dade County Code of Ordinance section 33-257 provides the specific procedures that landowners or developers must follow to describe future easements over their land in multi-parcel developments, "where multiple buildings are proposed for a single site." Section 33-257, titled "Unity of title; covenant in lieu thereof" provides that a developer or landowner shall provide a "declaration of restrictive covenants" and the declaration "shall contain the following necessary elements …." § 33.257(2). One of the necessary elements is contained in subsection (c) which states:

13

(c) That in the event of multiple ownerships subsequent to site plan approval, that each of the subsequent owners shall be bound by the terms, provisions and conditions of the declaration of restrictive covenants. The owner shall further agree that he or she will not convey portions of the subject property to such other parties unless and until the owner and such other party (parties) shall have executed and mutually delivered, in recordable form, an instrument to be known as an "easement and operating agreement" . . .

§ 22-257(2)(c), Miami Dade County, Fla., Code of Ordinances. That section further provides, "These provisions of the easement and operating agreement shall not be amended without prior written approval of the Office of the County Attorney." § 33-257(2)(c). In addition, in Persaud Properties FL Investments, LLC v. Town of Fort Myers Beach, 310 So. 3d 493, 496 (Fla. 2d DCA 2020), the Second District Court of Appeal stated:

Moreover, zoning ordinances, like statutes that are in derogation of the common law, "will not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute [or ordinance] was not intended to make any alteration other than was specified and plainly pronounced."…"[T]he presumption is that no change in the common law is intended unless the statute is explicit in this regard."

Id. (internal citations omitted). We agree with Common Wealth's contention that section 33-257 clarifies the common law rule set out in One Harbor; thus, it must be narrowly construed. Accordingly, the rule in Florida that a property owner cannot create an easement over his own property is not superseded by section 33-257.

14

Importantly, here, the evidence does not support that the requirements of section 33-257 were followed; thus, the alleged easement was *void ab initio*. South Florida Hotel, the property owner that executed the declarations, did not include the language from section 33.257(2)(c) that South Florida Hotel "will not convey portions of the subject property to such other parties unless and until the owner and such other party (parties) shall have executed and mutually delivered, in recordable form, an instrument to be known as the 'easement and operating agreement' . . . ." Also, there is no evidence in the record that the subsequent owners of the subject parcels executed and delivered the Easement and Operating Agreement. To meet the requirements of section 33-257, SF Hotels had to execute and record the "Easement and Operating Agreement" when South Florida Hotel, the original owner and developer, conveyed the Condominium Lot and Convention Lot in October 2005 through the Warranty Deed. It did not. In fact, SF Hotels did not execute any of the documents that AFP now claims created an easement in its favor. As previously noted, the Declaration of Covenants contains the signatures of MIMM Master Association, Inc. and MIMM Condominium Association, Inc. Those were the two corporations related to the Condominium Lot. In addition, the copy of the October 2005 Warranty Deed, is signed only by South Florida Hotel, the original grantor. It is not signed by

15

SF Hotels, which is the corporation to which South Florida Hotel conveyed the Convention Lot.

Furthermore, there is no evidence in the record that AFP executed an "Easement and Operating Agreement" when it acquired the Convention Lot in August 2009. Nor is there evidence in the record that Common Wealth executed an "Easement and Operating Agreement" when it acquired the Undeveloped Lot in June 2019. As previously stated, the only party that executed the "Easement and Operating Agreement" is the original grantor, South Florida Hotel. In the Declaration of Covenants, which South Florida Hotel executed on April 29, 2004, Paragraph F of this document stated that Article 4 of this Declaration "shall serve as the required 'Easement and Operating Agreement'", as required by section 33-257 of the Miami-Dade County Code. Accordingly, it is clear from the record that neither AFP nor Common Wealth executed the "Easement and Operating Agreement."

AFP contends that the Supplemental Declaration supports its position that an easement was created. It alleges that the Warranty Deed conveyed the Convention Lot from South Florida Hotel to SF Hotels. The Warranty Deed states that the conveyance is made "pursuant to [the Declaration of Covenants]…as modified by the Supplemental Declaration." AFP contends that the Supplemental Declaration "confers a parking easement requiring the

Undeveloped Lot Owner to maintain 583 parking spaces for use by the owners of the Convention Lot and Condominium Lot."

However, Common Wealth is correct that the Supplemental Declaration was null and void. Consequently, AFP cannot use the Supplemental Declaration to support an easement. First, if South Florida wanted to create an easement with the Supplemental Declaration, it failed because the Supplemental Declaration was not signed by SF Hotel when it acquired the Convention Lot and the Condominium Lot in 2005. Section 33-257 of the Miami-Dade County Code required SF Hotels to sign the Supplemental Declaration.

Second, section 33-257 states the that the provisions of the easement and operating agreement "shall not be amended without prior written approval of the Office of the County Attorney." § 33-257(2)(c). Accordingly, to modify or create another easement, SF Hotel needed the written approval from the County Attorney's Office to amend the original "Easement and Operating Agreement," something SF Hotel did not do. AFP argues that prior written approval from the Office of the County Attorney was not required because the Supplemental Declaration did not modify or amend the easements. However, in the third "WHEREAS" paragraph on the first page of the Supplemental Declaration, it states: "Declarant desires to supplement,

17

modify and amend the Declaration." Further, in the first paragraph on the second page of the Supplemental Declaration, it states: "NOW THEREFORE, … Declarant hereby supplements, modifies and amends the Declaration as follows: . . . ." Accordingly, AFP's argument on this point is not supported by the record.

Moreover, the October 5, 2005 Warranty Deed did not convey any easement in the Undeveloped Lot because at the time the Warranty Deed was executed, the Supplemental Declaration was not in effect. The Warranty Deed states that the Convention and Condominium Lot parcels were being conveyed "pursuant to that certain Declaration of Covenants, Conditions, Restrictions, Easements and Operating Agreement . . . as modified by the Supplemental Declaration of Covenants and Conditions dated September 30, 2005, to be recorded in the Public Records of Miami-Dade County, Florida, prior to or concurrently with this deed." However, as Common Wealth correctly contends, there is no document in the record on appeal with that date of September 30, 2005. The Supplemental Declaration in the record on appeal does not have a date on it in the first paragraph on the first page of the document. The date is left blank. The day is also left blank on the signature pages.

The Supplemental Declaration was recorded on November 1, 2005, while the Warranty Deed was signed on October 3, 2005 and then recorded on October 12, 2005. Accordingly, we agree with Common Wealth that the Warranty Deed did not incorporate any easement from the Supplemental Declaration because, as Common Wealth contends, a document cannot incorporate by reference the terms of another document that has not yet come into existence. 2000 Presidential Way, LLC v. Bank of N.Y. Mellon, 326 So. 3d 64, 70 (Fla. 4th DCA 2021) ("[T]he doctrine of incorporation by reference is generally limited to documents that actually exist at the time of the incorporation. . . . 'Incorporation by reference pulls existing material into the new, incorporation contract; it does not push material terms into nonexistent, as-yet-unassented-to future contracts.'").Thus, the Supplemental Declaration was not effective prior to its recordation.

With respect to AFP's argument that the trial court erred in granting summary judgment in Common Wealth's favor despite AFP's affirmative defenses of estoppel, laches and waivers, and unclean hands, the trial court properly entered summary judgment on these affirmative defenses. All three equitable defenses fail under the Fifth District Court of Appeal's opinion in One Harbor. One Harbor was the defendant trying to enforce the alleged easement. It raised various affirmative defenses, including equitable

19

estoppel. Id. at 1042. The Fifth District Court of Appeal found that the alleged easement was void ab initio. The One Harbor Court stated:

> One Harbor urges this court to employ its equitable powers to give effect to the intent of the parties in view of fifteen years of uncontested use of the property, and to declare the easement valid, but such remedy is beyond this court's power. Courts of equity simply have no power to issue rulings which they consider to be in the best interest of justice without regard to established law.

Id. at 1045. Similarly, here, the trial court found that the alleged parking easement was *void ab initio*, and thus, correctly ruled that summary judgment was proper on AFP's affirmative defenses which were equitable in nature.

Finally, turning to AFP's contention that the trial court erred in granting summary judgment in Common Wealth's favor on AFP's implied easement counterclaim, AFP is not entitled to an implied easement as a matter of law. First, AFP argues that the trial court granted the summary judgment on AFP's counterclaim without notice. At the end of the summary judgment hearing on August 25, 2021, the trial court stated it was granting summary judgment in Common Wealth's favor. AFP's counsel did not argue to the trial court that the summary judgment should not be limited to Common Wealth's direct claim. Thus, the trial court's "Order Granting Third-Party Plaintiff Common Wealth Trust's Motion for Final Summary Judgment" stated that

summary judgment was entered in favor of Common Wealth and against AFP on Common Wealth's Third-Party Complaint, "and on AFP's Counterclaim." AFP did not move for rehearing to allow the trial court to correct any error AFP was contending the trial court made, which AFP was required to do. "If the error is one that first appears in the final order, the aggrieved party must bring it to the judge's attention by filing a motion for rehearing." Hamilton v. R.L. Best Intl., 996 So. 2d 233, 234 (Fla. 1st DCA 2008).  Thus, because the issue was not raised below, AFP cannot raise the issue now for the first time on appeal. Dade Cty. Sch. Bd. V. Radio Station WQBA, 731 So. 2d 638 (Fla. 1999); see also Clear Channel Commc'ns, Inc. v. City of N. Bay Village, 911 So. 2d 188, 190 (Fla. 3d DCA 2005) ("The purpose for requiring a contemporaneous objection is to put the trial judge on notice of a possible error, to afford an opportunity to correct the error early in the proceedings, and to prevent a litigant from not challenging an error so that he or she may later use it for tactical advantage.").

Second, AFP cites to Faussner v. Wever, 432 So. 2d 100 (Fla. 2d DCA 1983), in support of its contention that the trial court did not give AFP notice that it was going to address AFP's counterclaim. However, Faussner is distinguishable. In Faussner, the plaintiff was a buyer in a real estate contract who sued the seller for specific performance. Id. at 101. The seller

21

counterclaimed for liquidated damages. Id. The seller moved for summary judgment on the plaintiff's specific performance claim but not on the seller's counterclaim for liquidated damages. The trial court granted summary judgment in the defendant seller's favor on the plaintiff's specific performance claim, as well as on the defendant's counterclaim for liquidated damages. The plaintiff appealed. Id.

The Second District Court of Appeal reversed the summary judgment on the counterclaim based on lack of notice, concluding that the plaintiff had no indication the liquidated damages counterclaim would be addressed at the hearing. The appellate court noted that "the counterclaim was not addressed by any motion . . . ." Id. at 102. Here, AFP was asserting the counterclaim, and AFP made the trial court aware of AFP's counterclaim before the trial court held the hearing on Common Wealth's motion for summary judgment. AFP argued in its response to Common Wealth's motion for summary judgment that summary judgment should not be entered in Common Wealth's favor because AFP had asserted counterclaims for prescriptive easement and implied easement. Accordingly, unlike the plaintiff in Faussner, AFP cannot claim to not have notice when Common Wealth raised the issue at the summary judgment hearing. Thus, the trial court did not err in granting summary judgment on AFP's counterclaim.

For these foregoing reasons, we affirm the trial court's "Order Granting Third-Party Plaintiff Common Wealth Trust's Motion for Final Summary Judgment." AFP is not entitled to an easement by virtue of the Declaration of Covenants because that document is invalid as a matter of law. In addition, the Supplemental Declaration also fails for the reasons previously discussed. We also affirm the trial court's order denying AFP's motion for rehearing or reconsideration.

Affirmed.